No.: 15-10582

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

MARGARET C. RENFROE,
*Plaintiff-Appellant*

v.

NATIONSTAR MORTGAGE, LLC,
*Defendant-Appellee.*

On Appeal from the United States District Court
for the Southern District of Alabama
1:14-CV-00314-CG-M

APPELLANT BRIEF

Kenneth J. Riemer
Underwood & Riemer PC
166 Government Street, Suite 100
Mobile, Alabama 36602
251.432.9212
*Counsel for the Appellant*

March 30, 2015

No.: 15-10582

## IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

### MARGARET C. RENFROE,
*Plaintiff-Appellant*

v.

### NATIONSTAR MORTGAGE, LLC,
*Defendant-Appellee.*

On Appeal from the United States District Court
for the Southern District of Alabama
1:14-CV-00314-CG-M

## APPELLANT BRIEF

Kenneth J. Riemer
Underwood & Riemer PC
166 Government Street, Suite 100
Mobile, Alabama 36602
251.432.9212
*Counsel for the Appellant*

**March 30, 2015**

**15-10582**
*Margaret Renfroe v. Nationstar Mortgage, LLC*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

COMES NOW appellant, Margaret Renfroe, and pursuant to FRAP 26.1-1, by and through the undersigned Counsel of record and certifies that the following is a full and complete list of all interested parties in this action:

1.    Pursuant to FRAP 26.1 the undersigned Counsel of record for the Appellant to this action, certifies that the following is a full and complete list of all parties in this action:

    a.    Margaret Renfroe

    b.    Nationstar Mortgage, LLC

2.    The undersigned certifies that the following is a full and complete list of all persons serving as judges in the U.S. District Court of the Southern District of Alabama in the proceeding:

    a.    Hon. Judge Callie V. S. Granade

    b.    Hon. Magistrate Judge Bert W. Milling, Jr.

3.    The undersigned further certifies that the following is a full and complete list of all persons serving as attorneys for the parties in the proceeding:

    a.    For the Plaintiff-Appellant, Margaret Renfroe:

Kenneth J. Riemer
Underwood & Riemer, PC
166 Government Street, Suite 100
Mobile, AL 36602
(251) 432.9212
kjr@alaconsumerlaw.com

Earl P. Underwood, Jr.
Underwood & Riemer, PC
21 South Section Street
Fairhope, AL 36580
(251) 990.5558
epunderwood@alalaw.com

b.    For the Defendant-Appellee

Gregory C. Cook
Balch & Bingham
P.O. Box 306
Birmingham, AL 35201
(205) 251-8100
Email: gcook@balch.com

Griffin Lane Knight
BALCH & BINGHAM, LLP
Post Office Box 78
Montgomery AL 36101-0078
(334) 834-6500
lknight@balch.com

John Wesley Naramore
BALCH & BINGHAM, LLP
105 Tallapoosa St Suite 200
Montgomery, AL 36104
(334) 269-3144
jnaramore@balch.com

iii

## STATEMENT REGARDING ORAL ARGUMENT

Appellant submits that oral argument may be helpful and requests same.

## TABLE of RECORD REFERENCES in the BRIEF

**Brief Page No.**                                                                                  **Docket No.**

1                        Complaint ........................................................................ 1

1                        Motion to Dismiss by Nationstar ................................................ 5

1                        Memorandum in Support of Motion to Dismiss ....................... 6

1                        Response in Opposition.............................................................. 17

1                        Reply Brief ................................................................................ 19

1                        Motion to Amend Complaint ................................................... 20

1                        Order ......................................................................................... 23

1-5, 12, 13, 19,          Amended Complaint .................................................................. 24
21, 23, 28, 30

1                        Motion to Dismiss Amended Complaint ................................... 25

1, 29                     Memorandum in Support of Motion to Dismiss ....................... 26

1, 13                     Response in Opposition ............................................................. 28

1, 12, 22                 Report and Recommendation ................................................... 32

1, 13                     Objection .................................................................................. 33

1                        Response to Objection .............................................................. 34

1                        Order ......................................................................................... 35

1                        Notice of Appeal ....................................................................... 38

# TABLE OF CONTENTS

Certificate of Interested Persons........................................................................ ii

Statement Regarding Oral Argument ................................................................ iv

Table of Record References in Brief................................................................. v

Table of Contents .............................................................................................. vi

Table of Authorities.......................................................................................... viii

Jurisdictional Statement ................................................................................... xii

Statement of the Issue....................................................................................... 1

Statement of the Case ....................................................................................... 1

Statement of Facts ............................................................................................ 2

Summary of Argument...................................................................................... 6

Argument........................................................................................................... 8

A.    Motion to Dismiss Standard.................................................................. 8

B.    Section 2605(e) Imposes Affirmative Duty Upon Servicers to Investigate
      and Correct Errors ................................................................................ 9

      1. Section 2605(e) ................................................................................ 9

      2. The 2013 Amendments to Reg X...................................................... 15

      3. Renfroe Alleged Violation of Sections 2605(e) and 1024.35........ 18

C.    Renfroe Adequately Alleged Actual Damages.................................... 19

      1. Allegations in the Amended Complaint ....................................... 20

    2. Fact that Same Damages Stem From Breach of Mortgage is Immaterial ... 21

    3. Expenses Relating to Sending NOE are Actual Damages............................ 23

D.     Renfroe Adequately Alleged Pattern and Practice of Violations ................. 27

E.     Nationstar Was Required to Investigate and Correct Errors Even Though Loan Was Closed ......................................................................................... 28

CONCLUSION .................................................................................................... 30

CERTIFICATE OF SERVICE.............................................................................. 31

# TABLE OF AUTHORITIES

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L.Ed. 2d 868 (2009) ......................... 8

Bates v. JPMorgan Chase Bank, NA, 768 F.3d 1126 (11th Cir. 2014) ................ 15

Bell Atl. Corp. v. Twombly, 550 U.S. 544, (2007) ..................................................... 8

Catalan v. GMAC Mortgage Corp., 629 F.3d 676 (7th Cir. 2011) ......................... 20

Clifton v. Citimortgage, Inc.,, 2011 WL 891317 (D.S.C. Mar. 11, 2011) ............. 13

Cortez v. Keystone Bank, Inc., 2000 WL 536666 (E.D. Pa. May 2, 2000) ........... 24

Echevarria v. Chicago Title & Trust Co., 256 F.3d 623 (7th Cir. 2001) ............... 16

Friedman v. Maspeth Fed. Loan & Sav. Ass'n, 2014 WL 3473407, (E.D.N.Y. July 14, 2014)........................................................................................... 13

Gray v. Nationstar Mortgage, LLC, 2012 WL 359764,
(E.D. Mich. Feb. 2, 2012)......................................................................... 13

In re Griffin, 2010 WL 3928610 (Bankr. S.D.N.Y. Aug. 31, 2010)....................... 21

Hardy v. Regions Mortg., Inc., 449 F.3d 1357(11th Cir.2006) ................................ 9

Heimmermann v. First Union Mortgage Corp., 305 F.3d 1257 (11th Cir. 2002)... 16

Holland v. GMAC Mortgage Corp., 2006 WL 1133224
(D. Kan. Apr. 26, 2006)............................................................................ 13

Houston v. U.S. Bank Home Mortgage Wisconsin Servicing, 505 F. App'x 543 (6th Cir. 2012) ............................................................................................... 20

Joern v. Ocwen Loan Serv., L.L.C., 2010 WL 3516907
(E.D. Wash. Sept. 2, 2010)........................................................................ 29

Johnstone v. Bank of Am., N.A., 173 F. Supp. 2d 809(N.D. Ill. 2001) ................. 25

Justice v. Ocwen Loan Servicing, 2015 WL 235738 (S.D. Ohio Jan. 16, 2015) ... 25

Kapsis v. Am. Home Mortg. Servicing Inc., 923 F. Supp. 2d 430
(E.D.N.Y. 2013) ................................................................................................. 21

In re Madel, No. 03, 2004 WL 4055247 (Bankr. E.D. Wis.
Nov. 8, 2004) .................................................................................................... 30

Marais v. Chase Home Fin. LLC, 736 F.3d 711 (6th Cir. 2013) ................. 14, 20, 24

Marais v. Chase Home Fin., LLC, 24 F.Supp.2d 712 (S.D. Ohio 2014) ............... 13

McLean v. GMAC Mortgage Corp., 398 F. App'x 467 (11th Cir.
2010) ............................................................................................................... 6, 9

McMillen v. Resurgent Capital Servs., L.P., 2014 WL 3341337
(S.D. Ohio July 8, 2014) ..................................................................................... 25

Mellentine v. Ameriquest Mortg. Co., 515 Fed.Appx. 419 (6th Cir.2013) ............ 20

Mourning v. Family Publ'n Serv., Inc., 411 U.S. 356 (1972) ................................. 16

Ploog v. HomeSide Lending, Inc., 209 F. Supp. 2d 863 (N.D. Ill. 2002) ............... 28

Price v. Countrywide Home Loans, Inc., 2005 WL 2354348 (S.D. Ga. Sept. 26,
2005) ................................................................................................................. 16

Rawlings v. Dovenmuehle Mortgage, Inc., 64 F. Supp. 2d 1156
(M.D. Ala. 1999) .............................................................................................. 9, 30

In re Rodriguez, 377 B.R. 1 (Bankr. D.P.R. 2007) .................................................. 30

Russell v. Nationstar Mortgage, LLC, 2015 WL 541893 (S.D. Fla. Feb. 10,
2015) ................................................................................................................. 26

Selman v. CitiMortgage, Inc., 2013 WL 838193(S.D. Ala. Mar. 5, 2013) ............. 28

Serfass v. CIT Group/Consumer Fin., Inc., 2008 WL 4200356 (D.S.C. Sept. 10,
2008) ................................................................................................................. 28

Starkey v. JP Morgan Chase Bank, N.A., 2013 WL 6669268
(S.D. Ohio Dec. 18, 2013) ........................................................ 18

In re Tomasevic, 273 B.R. 682 (Bankr. M.D. Fla. 2002) ........................................ 25

Vassalotti v. Wells Fargo Bank, N.A., 732 F. Supp. 2d 503 (E.D. Pa. 2010) ........ 18

Watts v. Fla. Int'l Univ, 495 F.3d 1289 (11th Cir. 2007) ............................................ 9

Wilchobe v. TeeVee Toons, Inc., 555 F. 3d 949 (11th Cir. 2009) .............................. 8

Wilson v. Bank of Am., N.A., 2014 WL 4744555,
(E.D. Pa. Sept. 24, 2014) ............................................................ 17, 18, 19

## STATUTES

Rule 12(b)(6), Fed. R.Civ.Pro. ................................................................ 8

12 U.S.C. § 2605(e) ............................................................ 3, 5, 11, 20

12 U.S.C. § 2605(f) ............................................................ 24, 26, 27

12 U.S.C. § 2605(k) ............................................................ 11, 22, 23

12 U.S.C. § 2617(a) ............................................................ 16

x

# JURISDICTIONAL STATEMENT

### A.    District Court Jurisdiction

This action includes claims arising under the statutes of the United States and jurisdiction in the United States District Court for the Southern District of Alabama is conferred by 28 U.S.C. § 1331.

### B.    Appellate Jurisdiction

Jurisdiction of the Eleventh Circuit Court of Appeals is invoked under 28 U.S.C. § 1294(1) and 28 U.S.C. § 1291. The Appellate Court has jurisdiction pursuant to the District Court's granting of Defendant's Motion to Dismiss on February 10, 2015.  Renfroe Notice of Appeal was timely filed on February 10, 2015.

## STATEMENT OF THE ISSUE

Whether the lower court erred in its determination that Plaintiff failed to state a claim for violation of RESPA Section 2605 and failed to adequately allege damages.

## STATEMENT OF THE CASE

On July 24, 2014 Margaret Renfroe filed her Complaint in the Southern District of Alabama. (Doc. 1). Nationstar filed a Motion to Dismiss the Complaint, which was denied as moot. (Doc. 5 & 23). Renfroe filed an Amended Complaint on October 10, 2014. (Doc. 24). On October 28, 2014 Nationstar filed a Motion to Dismiss the Amended Complaint (Doc.s 25 & 26). On November 24, 2014 Renfroe filed her Brief in Opposition to the Motion to Dismiss. (Doc. 28). On January 15, 2015 Magistrate Judge Bert W. Milling, Jr. issued a Report and Recommendation ("RR") recommending that Nationstar's Motion to Dismiss be granted. (Doc. 32). On January 29, 2015, Plaintiff filed her Objections to the RR. (Doc. 33). On February 10, 2015 Judge Callie V. S. Granade adopted the RR and dismissed the case with prejudice. (Doc. 35). On the same day Renfroe filed her Notice of Appeal of the District Court's dismissal. (Doc. 38).

1

## STATEMENT OF FACTS

Margaret Renfroe is a retired bank manager. She lives at 109 Glenwood Street in Mobile. This has been her home for 14 years. (Doc. 24, ¶ 5). In May 2006, Mrs. Renfroe refinanced her existing mortgage with Wilmington Finance, Inc. (Doc. 24, ¶ 6). Several years into the loan, servicing was transferred to Nationstar. Shortly thereafter, the monthly payments inexplicably increased by around $100. Plaintiff called Nationstar about this but was never given an explanation as to why the payments increased. Plaintiff suspected that Nationstar may be paying taxes in error on her behalf and charging her for that payment through escrow, resulting in the increase. However, she could not get a confirmation of that from Nationstar. (Doc. 24, ¶¶ 7-8). In September 2013, Mrs. Renfroe refinanced her mortgage and Nationstar was paid the sum it claimed was owed. At that time she discovered that Nationstar may have been miscalculating the principal and interest payments and using an incorrect amortization schedule. (Doc. 24, ¶¶ 9-10).

On June 17, 2014, Mrs. Renfroe sent Nationstar a letter seeking an explanation of why her payments increased and explaining her belief that the payments were not calculated properly. (Doc. 24, ¶ 11). This letter constitutes a "Qualified Written Request" ("QWR") and a "Notice of Servicing Error" ("NOE") within the meaning

2

of 12 U.S.C. § 2605(e), and RESPA's implementing regulations ("Reg. X"), 12 C.F.R. § 1024.35. (Doc. 24, ¶ 29).

On June 26, 2014, Nationstar responded to Plaintiff's letter, but failed to provide any explanation of payment calculation or amortization. Nationstar failed to address the specific questions and concerns raised in the letter. Instead, Nationstar provided boilerplate statements and objections which did not apply to Plaintiff's letter, provided information and documents not requested and, without explanation, stated the general conclusion that the servicing of the account complied with applicable state and federal law. (Doc. 24, ¶¶12-14). No specific information addressing the servicing errors identified in Renfroe's letter was provided.

Nationstar stated that the information requested "does not pertain directly to the servicing of the loan, does not identify any specific servicing errors, and/or is considered proprietary and confidential. Therefore, this information is considered outside of the scope of information that must be provided." That statement mischaracterized Plaintiff's request for correction and could not be based on any reasonable interpretation of her letter. Mrs. Renfroe's notice of error unambiguously stated her belief that Nationstar had improperly calculated her payments. (Doc. 24, ¶13).

3

As a matter of practice, Nationstar uses this standard objection, regardless of the specificity of the individual request. At the same time, Nationstar provides basic loan documents such as a copy of the promissory note and mortgage and a most recent statement. This is done regardless of whether they are requested or relevant to the dispute. (Doc. 24, ¶¶ 15-16). It is also Nationstar's practice to only provide payment history covering the period of time in which it serviced the loan even where, as here, the borrower requests an entire payment history. (Doc. 24, ¶17). Nationstar provided the same generic and non-responsive form letters to at least five (5) other borrowers in response to QWR/NOEs. These form letters were sent borrowers in Birmingham, Alabama; Mobile Alabama and Lexington, Maryland. In each situation, Nationstar's form and generic response failed to address the specific issues addressed in the borrower's letter and violated RESPA Section 2605(e). (Doc. 24, ¶16).

Nationstar failed to provide the information actually requested by Mrs. Renfroe. For instance, Renfroe requested a "complete" payment history but was provided a history covering only the time the loan was serviced by Nationstar. Although Nationstar states in its letter that this information is "not available," it is difficult to imagine that Nationstar would assume servicing an existing loan with no information as to the prior payment history. Nationstar also failed to provide the

4

escrow history requested and an explanation of whether it was charging Renfroe for property taxes. Nor did Nationstar provide an explanation of how payments were calculated and which amortization schedule was used. All of this information was requested and is directly related to Renfroe's dispute. (Doc. 24, ¶ 19).

Moreover, Nationstar took no reasonable measures to correct the error identified in Plaintiff's letter. Nationstar's response states that "[u]pon receipt of this correspondence, the above-mentioned loan and related documents were reviewed and found to comply with all state and federal guidelines that regulate them. As such, the above-mentioned loan account will continue to be serviced appropriate to its status." (Doc. 24, ¶ 18). Nationstar has failed to provide any further information to Mrs. Renfroe and has failed to issue any refund. (Doc. 24, ¶ 19).

Nationstar has violated the requirements set out 12 U.S.C. § 2605(e) and its implementing regulations by failing to respond to Plaintiff's QWR and NOE, by failing to conduct any reasonable investigation of the errors described in Plaintiff's letter and by failing to make corrections, which would include a refund of sums wrongfully collected. (Doc. 24, ¶ 20). Renfroe also incurred expenses in sending the QWR/NOE which, because of Nationstar's inaction, has been for naught. Id.

## SUMMARY OF ARGUMENT

The lower court held that Nationstar complied with Section 2605(e) because it provided *some* response, regardless of the correctness of the response or whether it addressed any of the detailed errors identified in Renfroe's NOE. A servicer does not have the unfettered right to choose between the three response options set out in Section 2605(e)(2), but instead must choose the option most appropriate under the circumstances. Allowing a servicer to comply with 2605(e) with only a general statement that it committed no error, without regard to the correctness of that statement, conflicts with the liberal, pro-consumer, construction which the court was bound to apply to servicer's RESPA obligations. McLean v. GMAC Mortgage Corp., 398 F. App'x 467, 471 (11th Cir. 2010).

Any doubt as to the servicer's duties in this regard was erased by the 2013 amendments to RESPA's implementing regulation ("Reg. X"). Reg. X now imposes an affirmatively duty, in response to a NOE, to either (1) correct the error or, (2) *after conducing a reasonable investigation*, provide detailed explanation of the reasons for not doing so. 12. C.F.R. 1024.35. Renfroe clearly alleged that Nationstar failed to do either and, therefore, she properly stated a RESPA claim. The lower court wholly ignored these binding regulations.

6

Renfroe alleged that Nationstar's failure to adequately investigate her NOE and correct its errors, including the collection of monies not owed, caused her economic damages. These include the failure to refund the wrongfully collected money. Because Nationstar had a duty under RESPA to correct errors, which included issuing a refund, the failure to issue a refund is a proximate result of the RESPA violation. The court erroneously concluded that these damages were not recoverable because Nationstar's errors would also constitute a breach of the loan agreement. RESPA unambiguously encompasses servicing errors which also constitute a breach of the loan agreement.

The court also erred by rejecting Renfroe's allegation that the expenses relating to sending the NOE constitute actual damages. Nationstar's failure to adequately respond to Renfroe's request rendered the sending of the NOE useless, which in turn rendered those costs damages proximately caused by Nationstar violation. Many courts, including courts in this Circuit, have held that these damages are recoverable under Section 2605(f) and this conclusion is consistent with RESPA's broad pro-consumer remedial purposes.

Renfroe's adequately alleged a pattern or practice of violation necessary to recover statutory damages. She alleged in detail Nationstar's practice of responding to borrower notices identifying specific servicing errors with standardized,

boilerplate responses which do not adequately address the issues raised by the borrower. Renfroe further identified five (5) other instances of similar conduct. Such allegations are sufficient to state a claim for statutory damages under Section 2605(f)(1)(B).

## ARGUMENT

### A.     Motion to Dismiss Standard

When considering a 12(b)(6) motion to dismiss, the Court must accept as true all facts set forth in the Complaint and limit its consideration to the pleadings and exhibits attached thereto. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); Wilchobe v. TeeVee Toons, Inc., 555 F. 3d 949, 959 (11th Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L.Ed. 2d 868 (2009)(quoting Twombly, 550 U.S. at 570). A complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 55. "[A] formulaic recitation of the elements of a cause of action will not do[.]" Id. Rule 12(b)(6) does not however "impose a probability requirement at the pleading stage." It is sufficient if the complaint succeeds in identifying facts that are suggestive enough to render the elements plausible. Watts v. Fla. Int'l Univ, 495 F.3d 1289, 1296 (11th Cir. 2007).

## B.    Section 2605(e) Imposes Affirmative Duty Upon Servicers to Investigate and Correct Errors

### 1.    Section 2605(e)

RESPA was originally enacted for the purpose of ensuring consumers access to essential information regarding the terms and costs of their loan at origination. The statute was expanded in 1992 to cover certain servicing issues.  This Court has recognized that RESPA is a consumer protection statute and, as such, should be liberally construed to serve its remedial purposes. McLean v. GMAC Mortgage Corp., 398 F. App'x 467, 471 (11th Cir. 2010); Hardy v. Regions Mortg., Inc., 449 F.3d 1357, 1359 (11th Cir.2006); see also Rawlings v. Dovenmuehle Mortgage, Inc., 64 F. Supp. 2d 1156 (M.D. Ala. 1999).

Among the provisions pertaining to mortgage servicing is Section 2605(e), which gives a borrower the right to submit a "Qualified Written Request" for information ("QWR") and Notice of Servicing Error ("NOE"), notifying the servicer of a specific servicing error and requesting correction.  That section states in pertinent part as follows:

> (e) Duty of loan servicer to respond to borrower inquiries
> (1) Notice of receipt of inquiry
> (A) In general
> > If any servicer of a federally related mortgage loan receives a Qualified Written Request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response

acknowledging receipt of the correspondence within 5 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

(B) Qualified Written Request

For purposes of this subsection, a Qualified Written Request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that-

\* \* \*

(ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

(2) Action with respect to inquiry

Not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any Qualified Written Request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall--

(A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);

(B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

(i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

10

(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

(i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 U.S.C. § 2605(e).

RESPA was amended in 2010 to add Section 2605(k), which renders it a separate violation to "[f]ail to take timely action to respond to a borrower's Notice of Servicing Error relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. §2605(k)(C).

Renfroe's NOE provided a detailed explanation of the servicing errors she believed occurred, including an unexplained payment increase, wrongful charges related to taxes and incorrect amortization of payments.  Nationstar's generic response failed to address any of her specific concerns and was limited to a general statement that "[u]pon receipt of this correspondence, the above-mentioned loan and related documents were reviewed and found to comply with all state and federal guidelines that regulate them.  As such, the above-mentioned loan account will

11

continue to be serviced appropriate to its status." (Doc. 24, ¶ 18).[1]  Nationstar also
failed to provide specific documents and information requests. (Id., ¶ 17).

The lower court concluded that Nationstar complied with 2605(e) because it
provided *some* response to the request which recited reasons for its position that no
error occurred.  The fact that Nationstar's conclusion was wrong, that no reasonable
investigation was conducted and that Renfroe's specific concerns were not addressed
at all was, according to the court, immaterial.  The  court interpreted Section
2605(e)(2) to mean that Nationstar was obligated to do nothing more than respond
with a generic statement that it had reviewed Renfroe's notice and determined that it
did nothing wrong.  (Doc. 32, p. 14).

This approach completely ignores the 2013 amendments to Reg. X which, as
explained below, unambiguously impose a duty to reasonably investigate any notice
of error.  12 C.F.R. § 1035(c).[2]  But even without regard to the amendments,  courts
have rejected the notion that a servicer has the unfettered right to choose between the
three options set out in 2605(e)(2).  It must choose the option most appropriate under

---

[1]The statement that the "account will continue to be serviced appropriate to its status" reveals
generic nature of the response and lack of an individualized treatment of her NOE. Mrs. Renfroe
refinanced the loan in September 2013. Therefore, Nationstar was not servicing the loan at the
time it responded to Renfroe's NOE.

[2]The lower court failed to even mention the 2013 amendments to Reg. X, despite their relevance
and the fact that they were thoroughly discussed in the Amended Complaint, as well as Plaintiff's
briefs. (See Doc. 24, ¶¶ 25-30; Doc. 28, pp. 10-11, 14-15; and Doc. 33, pp. 2-4).

the circumstances. <u>Friedman v. Maspeth Fed. Loan & Sav. Ass'n</u>, 2014 WL 3473407, slip op., p. 9 (E.D.N.Y. July 14, 2014)(plaintiff stated claim for violation of Section 2605(e) by alleging the servicer's response was incorrect); <u>Marais v. Chase Home Fin., LLC</u>, 24 F.Supp.2d 712 (S.D. Ohio 2014)(Chase did not comply with 2605(e) by simply denying of error occurred where borrower alleged that error should have been corrected); <u>Gray v. Nationstar Mortgage, LLC</u>, 2012 WL 359764, (E.D. Mich. Feb. 2, 2012)(denying summary judgment in light of evidence that Nationstar's general response that it committed no error was incorrect and that Nationstar gave no detailed explanation in response to the borrower's specific inquiry); <u>Clifton v. Citimortgage, Inc.</u>, 2011 WL 891317, slip op., p. 3 (D.S.C. Mar. 11, 2011)(denying Nationstar's motion to dismiss Section 2605(e) claim and stressing that servicer must take "appropriate" action in response to inquiry); <u>Holland v. GMAC Mortgage Corp.</u>, 2006 WL 1133224, slip op. p. 9 (D. Kan. Apr. 26, 2006)(finding liability because servicer failed to conduct any appropriate investigation and rejecting notion that servicer can rely its subjective belief that its response was appropriate).

Thorough analysis of this issue was undertaken by the <u>Marais</u> court.[3]  In that case, the borrower complained that Chase misapplied payments and charged certain

---

[3]This is the opinion on remand after reversal by the Sixth Circuit in <u>Marais v. Chase Home Fin. LLC</u>, 736 F.3d 711 (6th Cir. 2013).  The lower court had earlier granted Chase's motion to dismiss finding no damages, but that decision was reversed on the issue of damages recoverable under Section 2605(f).  The damages aspect of that decision is discussed below.

improper fees. Like the case at bar, Chase responded only by sending a form letter which failed to address the specific issues addressed. It also provided basic loan documents (a copy of the note and mortgage and a payment history). Chase made no corrections and failed to explain why it concluded that none were needed. Chase argued that this was adequate because the payment history identified the fees charged and explained how payments were applied. Chase argued that this complied with 2605(e) because it was required only to respond to the request, not necessarily provide the correct response. The court rejected this position.

> It would, for instance, hardly be broad or liberal construction (as is required for remedial statutes like RESPA) to say that a servicer, presented with a truthful allegation that an account was incorrect, could respond by providing information confirming the error (thereby plausibly meeting 12 U.S.C. § 2605(e)(2)(C)) but doing nothing about it.. . . *Nor would it make sense to allow a servicer to choose to explain a sham or unreasonable belief that the account is correct . . . rather than correcting the account pursuant to 12 U.S.C. § 2605(e)(2)(A). Following a QWR, a company is to choose at least one of the disjunctive response options in 12 U.S.C. § 2605(e)(2) but common sense, plain language, and liberal construction dictate that it must choose the appropriate option under the circumstances.*

Marais, 24 F.Supp.2d at 722 (emphasis added).

Here, Nationstar provided no information regarding the method used to calculate Renfroe's payment or why her payments increased. It simply recited the

---

14

conclusory statement that the account complies with "applicable federal and state law." This response is not sustainable under 2605(e).

> [i]magine that you are dining in a restaurant and notice an apparent error on the bill. You question the waiter about the error and he, without comment or dialogue, simply returns with a new copy of the exact same bill. Would you feel you had received "a written explanation or clarification" or that the waiter had "conduct[ed] an investigation" into the alleged error? . . . What Chase has done here is no different.

Id., at 724.

Bates v. JPMorgan Chase Bank, NA, 768 F.3d 1126 (11th Cir. 2014), cited by the lower court, is distinguishable on its facts. Bates addressed a lower court ruling, on summary judgment, that Chase provided an adequate and detailed explanation of why it rejected Bates' payments. Id. at 1134-35. This Court agreed with that evidentiary determination. Here, Renfroe alleges that no adequate explanation was provided and that no reasonable investigation was conducted, and those allegation must be accepted as true. (Doc. 24, ¶¶ 12-14 & 17).[4]

## 2. The 2013 Amendments to Reg X

RESPA authorizes the Consumer Finance Protection Bureau "to prescribe such rules and regulations, to make such interpretations, and to grant such reasonable

---

[4]Another distinguishing aspect of Bates is that it the borrower inquiry predates the Notice of Error requirements set out in 24 C.F.R. § 1024.35. As stated in the following section, that regulation extinguishes the notion that a servicer can refuse to make the requested corrections without conducting a reasonable investigation.

exemptions for classes of transactions, as may be necessary to achieve the purposes

of this chapter." 12 U.S.C. § 2617(a). Section 2605(j)(3) directs Bureau to "establish

any requirements necessary to carry out this section." 12 U.S.C. § 2605(j)(3).[5]

Pursuant to this authority, the Bureau promulgated new regulations in 2013 which

clarify the servicer's duty in responding to QWRs and NOEs.

> **(e) Response to notice of error.**
> (1) *Investigation and response requirements.*
> (i) *In general.* Except as provided in paragraphs (f) and (g) of this
> section, a servicer must respond to a notice of error by either:
>
> > (A) Correcting the error or errors identified by the borrower and
> > providing the borrower with a written notification of the
> > correction, the effective date of the correction, and contact
> > information, including a telephone number, for further assistance;
> > or
> >
> > (B) Conducting a reasonable investigation and providing the
> > borrower with a written notification that includes a statement that
> > the servicer has determined that no error occurred, a statement of
> > the reason or reasons for this determination, a statement of the
> > borrower's right to request documents relied upon by the servicer
> > in reaching its determination, information regarding how the
> > borrower can request such documents, and contact information,
> > including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e).

---

[5] It has long been recognized that this regulatory authority is broad and courts are bound to give effect to regulations promulgated pursuant to that authority. Mourning v. Family Publ'n Serv., Inc., 411 U.S. 356, 369 (1972); Heimmermann v. First Union Mortgage Corp., 305 F.3d 1257, 1262 (11th Cir. 2002); Echevarria v. Chicago Title & Trust Co., 256 F.3d 623, 627 (7th Cir. 2001); Price v. Countrywide Home Loans, Inc., 2005 WL 2354348, at *7 (S.D. Ga. Sept. 26, 2005).

These amendments, which became effective January 10, 2014, "altered the landscape" of a servicers obligations regarding a NOE. Wilson v. Bank of Am., N.A., 2014 WL 4744555, at *15 (E.D. Pa. Sept. 24, 2014). A servicer's duty to respond to a NOE is now clearly reduced to two options: It must either (1) correct the error or (2) after conducting a *reasonable* investigation, provide a detailed statement of the reasons for its determination that no error occurred, including a statement of the borrower's right to request documents relied on and contact information for further assistance. There is no longer any allowance (if there ever was) for the position that a servicer can comply by simply stating that it did nothing wrong, regardless of the correctness of that statement. "The addition of the word "reasonable" seemingly imposes a substantive obligation that is not satisfied by the mere procedural completion of some investigation followed by a written statement of reasons." Wilson, 2014 WL 4744555, slip op. at 15.

Given the amendment's January 2014 effective date, interpreting caselaw is sparse. The Wilson case is the only case found that expressly addresses servicer requirements post-amendment in any depth.[6] In Wilson, Bank of America argued that it had complied with plaintiff's NOE because it had conducted an investigation

---

[6]Wilson cites Friedman and Marais as post-amendment cases (Wilson, slip op., p. 15), but the recited facts of those cases reveal that the NOEs pre-dated January 2014.

and, therefore, had no liability, even though plaintiff alleged that the result of the investigation was incorrect. Bank of America relied on two pre-amendment cases: Starkey v. JP Morgan Chase Bank, N.A., 2013 WL 6669268 (S.D. Ohio Dec. 18, 2013); and Vassalotti v. Wells Fargo Bank, N.A., 732 F. Supp. 2d 503 (E.D. Pa. 2010). Explaining the effect of the 2013 amendments, the Wilson court rejected the argument.

> [P]re-Regulation X statutory language required nothing more than "an investigation" and a "written explanation" that the servicer believes supports its determination that the account is correct. As such, the courts—including those in Vassalotti and Starkey—could correctly conclude that RESPA imposed mere procedural obligations to investigate and respond, without any substantive obligation to ensure that the investigation was reasonable and the response was thorough. Regulation X, however, altered the landscape of those obligations. For example, in response to a Notice of Error, a servicer must now conduct a "reasonable investigation." The addition of the word "reasonable" seemingly imposes a substantive obligation that is not satisfied by the mere procedural completion of some investigation followed by a written statement of reasons.

Wilson, slip op., p. 15.

### 3.    Renfroe Adequately Alleged Violations of Section 2605(e) and 1024.35

Mrs. Renfroe alleged a violation of these requirements– not with bare-bones conclusions -- but with a fact-specific explanation of how Nationstar's response was deficient.   An example is Paragraph 20 of the Amended Complaint, which states as follows:

20. Among its other obligations under Section 2605(e), Nationstar was required to make any "appropriate corrections" to the account. In this case, this required, at a minimum, an investigation of Renfroe's claim that her loan was incorrectly amortized and that she was overcharged for escrow and a refund all payments which were wrongfully collected. Because the payoff amount Renfroe was required to pay was calculated on the wrong amortization schedule and included other unlawful charges, including money wrongfully collected for taxes she did not owe, she was owed a refund after notice of the error. She was not provided any such refund and has been damaged as a result. She also incurred expenses in sending the qualified written request which, because of Nationstar's inaction, has been for naught. This also constitutes damages suffered as a result of Nationstar's failure to comply with its Section 2605(e) duties.

(Doc. 24, ¶ 20). Paragraph 30 states that "Nationstar failed to conduct any reasonable investigation of the errors described in Plaintiff's letter and failed to refund monies wrongfully collected." (Id., ¶ 30). These factual allegations, which the Court must accept as true at this stage, clearly allege a violation of Section 2605(e) and Reg. X. Marais, 24 F.Supp.3d at 722.

## C.    Renfroe Adequately Alleged Actual Damages

A borrower may recover "actual damages" caused for a servicer's failure to comply with this provision, plus statutory fees of up to $2,000, attorney fees and costs. 12 U.S.C. § 2605(e). "Actual damages" in the context of Section 2605(f) is to be liberally construed in order to effectuate RESPA's broad remedial purpose. McLean, 398 F. App'x at 471. Actual damages include any economic damages incurred as a result of a servicer's failure to make correction. See e.g., Marais v.

19

Chase Home Fin. LLC, 736 F.3d 711, 721 (6th Cir. 2013). The borrower may also

recover non-pecuniary damages, including damages for emotional distress. McLean.,

398 F. App'x at 471; Marais, 736 F.3d at 721; Houston v. U.S. Bank Home Mortgage

Wisconsin Servicing, 505 F. App'x 543, 548 (6th Cir. 2012); Catalan v. GMAC

Mortgage Corp., 629 F.3d 676, 696 (7th Cir. 2011); Rawlings, 64 F. Supp. 2d at 1166.

Moreover, a plaintiff must allege plausibility of actual damages, but need not set out

detailed allegations of those damages.    Mellentine v. Ameriquest Mortg. Co., 515

Fed.Appx. 419, 424–25 (6th Cir.2013) (reversing the dismissal of RESPA claim for

failure to timely respond to a QWR where plaintiff had alleged that they had suffered

"damages in an amount not yet ascertained, to be proven at trial").

### 1.   Allegations in the Amended Complaint

The Amended Complaint includes detailed allegations of both the nature of the

damages suffered and the causal connection between Nationstar's violations and

those damages. Renfroe unambiguously alleges that Nationstar collected money not

owed, failed to properly investigate her claim and failed to make corrections

(including a refund of the wrongfully collected funds). She has been damaged

because, *inter alia*, she did not receive the refund that would have been generated had

Nationstar made the appropriate corrections to her account. She also alleged that she

20

incurred expenses related to the mailing of the NOE which, because of Nationstar's non-compliance, were for naught. (Doc. 24, ¶ 20).

There can be no doubt that these allegations constitute "actual damages" within the meaning of Section 2605(f). <u>Kapsis v. Am. Home Mortgage Servicing Inc.</u>, 923 F. Supp. 2d 430, 448 (E.D.N.Y. 2013)(allegations of misapplication of payments and the failure, after NOE, to correct the error establishes causal connection between damages and RESPA violation); <u>In re Griffin</u>, 2010 WL 3928610, slip op., p. 6 (Bankr. S.D.N.Y. Aug. 31, 2010)("It seems to me that if a complaint in a nonspeculative fashion asserted that a servicer or a lender had misapplied the borrowers' payments on the loan, it would clearly assert damages. And the failure to correct those damages, to my mind, would constitute proximate cause of actual damages in that the defendant would still be improperly billed for its loan, which seems to fit, to my mind, exactly within the language and purpose of RESPA.")

### 2.     Fact that Same Damages Stem From Breach of Mortgage is Immaterial

The lower court held that these allegations do not properly allege actual damages stemming from a RESPA violation because they also result from a breach of contract.

> While the Court acknowledges that Plaintiff has actual damages from some sort of discrepancy occurring during Nationstar's servicing of her loan, i.e., collection of escrow payments never due, payment of more

interest than originally bargained for, and a larger payoff upon refinancing, the Court finds that those damages do not stem from the alleged RESPA violation. Those damages sound in breach of contract, mortgage or note, and not in a RESPA violation.

(Doc. 32, p. 18).

This finding misconstrues the obligations imposed under Section 2605 and Reg X. As stated above, Nationstar is required either to make the requested corrections or, after conducting a reasonable investigation, explain in detail why it determined that no error occurred. Renfroe alleges that Nationstar should have corrected the errors, which would have included a refund of the wrongfully collected money. She also alleges that Nationstar failed to conduct any reasonable investigation which, if conducted, would have revealed the error. (Doc. 24, ¶¶ 20 & 30). It's simple: had Nationstar complied with 2605(e), she would have received a refund. Thus, the failure to do so is not only a breach of the promissory note, but also a violation of Section 2605(e) and the Reg. X (which is in turn a violation of 2605(k)).

It is immaterial that those same damages may also stem from a breach of the note. There is no support (and none is provided by either the lower court or in any of Nationstar's briefs) for the notion that damages for RESPA violations are somehow mutually exclusive of breach of contract damages. Nor is there any basis for excluding from RESPA's scope a servicing error which happens also to constitute a breach of the note. In fact, RESPA specifically encompasses servicing errors which

22

also constitute a breach of the loan agreement. Section 2605(k) renders it a violation of RESPA for a servicer to "fail to take timely action to respond to a borrower's requests to correct errors *relating to allocation of payments, final balances for purposes of paying off the loan*, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C.A. § 2605(k)(1)(C) (emphasis added). Of course, any improper "allocation of payments" or erroneous calculation of "final balances for purposes of paying off the loan" would also constitute a breach of the mortgage and/or note. By including these types of errors, Congress obviously intended to extend servicer liability for correcting these errors without regard to whether the errors also constitute a breach of the loan agreement.

### 3. Expenses Relating to Sending NOE are Actual Damages

The court erroneously rejected Renfroe's allegation that the expenses incurred in sending the NOE constitute actual damages recoverable under 2605(f). Renfroe is entitled to *any* economic damages incurred as a result of Nationstar's failure to make correction required under Section 2605(e). *See e.g.*, Marais v. Chase Home Fin. LLC, 736 F.3d 711, 721 (6th Cir. 2013). "Actual damage" encompasses "all expenses, costs, fees, and injuries fairly attributable to [the servicer's] failure to respond appropriately to the QWR, even if incurred before the failure to respond, are included." Marais, 24 F.Supp.3d at 728. The cost of sending the QWR is rendered

damages proximately cause by Nationstar's violation because Nationstar's failure to correct the error rendered those expenses wasted. Id.

Many courts, including courts in this Circuit, have held that these damages are recoverable under Section 2605(f). Marais, 736 F.3d at 721 (6th Cir. 2013)(lower court incorrectly rejected costs of sending QWR as "actual damages"); Russell v. Nationstar Mortgage, LLC, 2015 WL 541893, slip op., p. 2 (S.D. Fla. Feb. 10, 2015)(costs associated with sending QWR are actual damages, citing Marais); Justice v. Ocwen Loan Servicing, 2015 WL 235738, slip op., p. 19 (S.D. Ohio Jan. 16, 2015)("The Court finds that the cost to prepare the QWR may qualify as actual damages."); McMillen v. Resurgent Capital Servs., L.P., 2014 WL 3341337, slip op., p. 3 (S.D. Ohio July 8, 2014)("[W]here the borrower incurs costs as the result of submitting a QWR but effectively receives no benefit, due to a servicer's non-trivial violation of 12 U.S.C. § 2605(e)(2), those costs may become "actual damages" under 12 U.S.C. § 2605(f)(1)(A)."); In re Tomasevic, 273 B.R. 682, 688 (Bankr. M.D. Fla. 2002)("The cost of photocopies and postage would be compensable as actual damages if it is incurred in furtherance of seeking the bank's compliance with [RESPA] and the debtor can establish a violation of that statute"); Johnstone v. Bank of Am., N.A., 173 F. Supp. 2d 809, 816 (N.D. Ill. 2001)(allowing recovery of damages related to time spent and inconvenience); Cortez v. Keystone Bank, Inc.,

2000 WL 536666, slip op., p. 12 (E.D. Pa. May 2, 2000)("Actual damages encompass compensation for any pecuniary loss including such things as time spent away from employment while preparing correspondence to the loan servicer, and expenses for preparing, photocopying and obtaining certified copies of correspondence"); Rawlings, 64 F. Supp. 2d at 1164 (allowing recovery of costs associated with sending inquiry as "actual damages" under Section 2605(f)).

An in-depth analysis of these types of RESPA damages is provided in the Marias appellate and lower court decisions.  The Sixth Circuit reversed a lower court's rejection of these costs as damages stating that "the district court's determination that costs Marais incurred associated with preparing her QWR did not constitute actual damages . . . did not take into account Marais' argument that those costs were for naught *due to Chase's deficient response, i.e.,* her QWR expenses became actual damages when Chase ignored its statutory duties to adequately respond." Marais, 736 F.3d at 721 (emphasis in original).  On remand, the lower court thoroughly examined the issue and determined that these costs are recoverable, even though they were incurred prior to the violation.

> This Court still recognizes that there is some appeal in the argument that any RESPA violation will have damages built-in if actual damages are construed broadly enough to encompass costs associated with the QWR and suit to enforce RESPA. *But, upon reflection, such arguments prove too much.* Every civil case, after all, has some damages built-in. Recklessly discharging a gun in the air would satisfy most elements of

25

a tort. But the claim is not complete until the bullet turns Earthward and strikes something—causing damages. Damages are no more built-in to a RESPA suit than they are any tort, or any other cause of action that cannot and will not be brought without damages. That the deleterious consequences of the delict act are prerequisites to the claim, is not a good reason to exclude them as damages.

The Court also recognizes that there is great merit in the general proposition that damages are consequences that flow from the wrongful action and must, therefore, succeed the wrongful act in time. A headache that began hours before a car crash cannot be the result of the crash or considered as damages from it. However, in some cases, a wrongful act can cause damages retroactively. If a fellow pays a painter to paint his house, the payment is a cost. If the painter in fact, paints the house, the cost remains a cost. If the painter does not paint the house and instead, absconds with the money, the cost (though already incurred and paid) transmogrifies into damages.

*     *     *

Hence, with these considerations in mind. . . the Court construes actual damages as encompassing all provable injuries that are the result of Chase' response to receiving the QWR. Or, to put a finer point on it, all expenses, costs, fees, and injuries fairly attributable to Chase's failure to respond appropriately to the QWR, even if incurred before the failure to respond, are included.

Marais submits receipts showing postage for certified mailing of the QWR. Though she incurred these expenses and paid them prior to Chase's deficient response, these are damages. That is, when they were incurred they were merely the transaction costs incident to correcting Marais' account or obtaining information about her loan. *However, when Chase failed to do that which it was obligated to do, these costs metamorphosed into damages.* Thus, it was Chase's failure that caused the metamorphosis; thus, it was Chase that caused the damages; hence, these damages, née costs, are "actual damages to the borrower as a result of [Chase's] failure...." 12 U.S.C. § 2605(f)(1)(A).

26

Marais, 24 F.Supp.3d at 727-29.   This same is true here. Nationstar's failure to adequately respond to Renfroe's request rendered the sending of the NOE useless. Should it be determined that Nationstar should have corrected the error, then the costs associated with the inquiry are damages.

**D.     Renfroe Adequately Alleged Pattern or Practice of Violations**

Statutory damages are recoverable under Section 2605(f) upon a showing of a "pattern or practice of noncompliance."   12 U.S.C. § 2605(f)(1)(B).   Renfroe's allegations regarding Nationstar's pattern or practice of Section 2605(e) violations extend well beyond "[m]erely mouthing the buzzwords 'pattern and practice.'" Selman v. CitiMortgage, Inc., 2013 WL 838193, slip op. 9 (S.D. Ala. Mar. 5, 2013). The Amended Complaint alleges in detail Nationstar's practice of responding to borrower notices identifying specific servicing errors with standardized, boilerplate responses which do not adequately address the issues raised by the borrower and routinely provide information and documents not requested.   Renfroe further identified several other borrowers who received similar, non-complaint form letters. (Doc. 24, ¶¶ 15-16).

Without any detailed explanation, the lower court dismissed these allegations as insufficient.   The court merely cited Selman's conclusion that two violations do not constitute a pattern or practice.   The court provided no explanation of why five is

27

also not enough. However, courts have recognized that allegations of five instances of noncompliance constitutes a pattern or practice for purposes of Section 2605(f). Ploog v. HomeSide Lending, Inc., 209 F. Supp. 2d 863, 868 (N.D. Ill. 2002)(allegations of five instances of non-compliance with RESPA sufficiently states claim for statutory damages); Serfass v. CIT Group/Consumer Fin., Inc., 2008 WL 4200356,  slip op., p. 5 (D.S.C. Sept. 10, 2008) (pattern and practice of noncompliance established by servicer's failure to respond to five qualified written requests sent by the plaintiff). Other courts have held that less than five is sufficient. Kapsis, 923 F. Supp. 2d at 430 (allegation of more than two RESPA violations sufficient to survive motion to dismiss); Joern v. Ocwen Loan Serv., L.L.C., 2010 WL 3516907 (E.D. Wash. Sept. 2, 2010) (finding that three successive failures to timely acknowledge and/or respond to a qualified written request might constitute a pattern or practice).

Renfroe described Nationstar's wide-spread use of generic form response letters which do not sufficiently comply with RESPA and specifically identified five instances in which these were used in violation of 2605(e). These allegations are sufficient to state a claim for statutory damages.

**E.**	**Nationstar Was Required to Investigate and Correct Error Even Though Loan was Closed**

Nationstar argued below that it was not required to issue any refund, even if it

determined that it wrongfully collected money not owed by Renfroe, because it no longer services the loan. According to Nationstar, once the loan is closed there is no obligation to research whether it was serviced properly and to require it to do so would "render the statutes of limitations for claims based on the error useless..." (Doc. 26, p. 10). It is unclear whether or to what extent the lower court relied on this argument in reaching its conclusion. In any event, the argument is completely at odds with Section 2605(e) and Reg. X. The timeliness of a notice of error is specifically addressed in Reg. X which states that a notice is untimely only where it is served more than one year after the loan is discharged. 24 C.F.R. § 1024.35(g)(iii). Obviously, therefore, the duty to respond to a NOE extends beyond the termination of the servicing relationship or the discharge of the loan. Renfroe's loan was refinanced in September 2013 and her NOE was delivered in June 2014, well within the 1-year limitation. (Doc. 24, ¶ 9 & 11). There is no basis for the conclusion that the termination of the loan somehow exonerates a servicer from the duties imposed under Section 2605(e). *See, e.g.* In re Rodriguez, 377 B.R. 1, 7 (Bankr. D.P.R. 2007)(Servicers obligations under Section 2605(e) continued after foreclosure judgment). Likewise, Nationstar was obligated to investigate and correct the error, even if the error originated under a prior servicer. Rawlings v. Dovenmuehle Mortgage, Inc., 64 F. Supp. 2d 1156, 1163 (M.D. Ala. 1999); *see also* In re Madel,

No. 03, 2004 WL 4055247, at \*9 (Bankr. E.D. Wis. Nov. 8, 2004).

## CONCLUSION

For all the reasons stated above the dismissal of the Amended Complaint by

the District Court was in error and due to be reversed,

\s\Kenneth J. Riemer
KENNETH J. RIEMER
UNDERWOOD & RIEMER, PC
Attorney for the Appellant
166 Government Street
Mobile, Alabama 36602
(251) 432-9212
kjr@alaconsumerlaw.com

30

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of March, 2015 I have filed the brief for appellant with the Eleventh Circuit U.S. Court of Appeals CM/ECF Document Filing System and a copy of the brief for appellant and a copy of the record excerpt was served upon the following counsels of record via the United States mail, postage prepaid and properly addressed:

Gregory C. Cook
L. Conrad Anderson IV
Balch & Bingham, LLP
Post Office Box 306
Birmingham AL 35201-0306

John Wesley Naramore
BALCH & BINGHAM, LLP
105 Tallapoosa St Suite 200
Montgomery, AL 36104

John Ley, Clerk  *(Original plus 5 copies)*
US Court of Appeals for the Eleventh Circuit
56 Forsyth Street NW
Atlanta, GA 30303-2218

\s\ Kenneth J. Riemer
OF COUNSEL