No. 15-10582

# United States Court of Appeals
# for the Eleventh Circuit

◆

## MARGARET C. RENFROE,

**Plaintiff-Appellant,**

v.

## NATIONSTAR MORTGAGE, LLC,

**Defendant-Appellee.**

◆

On Appeal from the United States District Court
for the Southern District of Alabama
1:14-CV-00314-CB-M

## BRIEF OF DEFENDANT-APPELLEE NATIONSTAR MORTGAGE, LLC

*Attorneys for Defendant-Appellee Nationstar Mortgage, LLC:*

G. Lane Knight
John Wesley Naramore
BALCH & BINGHAM LLP
Post Office Box 78
Montgomery, AL  36101-0078
Telephone: (334) 834-6500
Facsimile:  (334) 269-3115

Gregory C. Cook
Ed R. Haden
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, AL 35201-0306
Telephone: (205) 226-8795
Facsimile:   (205) 488-5648

**May 11, 2015**

*Renfroe v. Nationstar Mortgage, LLC*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to FRAP 26.1 and 11th Circuit Rule 26.1-1, Counsel of Record certifies that in addition to the persons and entities listed on Plaintiff-Appellant Margaret Renfroe's Certificate of Interested Parties in her Opening Brief, Defendant-Appellee Nationstar Mortgage, LLC has the following affiliates and additional counsel:

a.    NationstarSub1 LLC (which owns 99% of Nationstar Mortgage LLC)

b.    Nationstar Sub2 LLC (which owns 1% of Nationstar Mortgage LLC)

c.    Nationstar Mortgage Holdings Inc. (a publicly held corporation with New York Stock Exchange symbol NSM that owns 100% of the interests in NationstarSub1 LLC and Nationstar Sub2 LLC).

d.    Counsel for Defendant-Appellee
      Ed R. Haden
      Balch & Bingham LLP
      P.O. Box 306
      Birmingham, AL 35201
      Telephone: (205) 226-8795
      Facsimile:  (205) 488-5648
      Email: ehaden@balch.com

This 11th day of May, 2015.

/s/ *Ed R. Haden*
One of the Attorneys for Defendant-Appellee Nationstar Mortgage, LLC

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Defendant-Appellee Nationstar Mortgage, LLC respectfully requests oral argument because of the impact the application of the *Twombly*/*Iqbal* standard will have on the response letters that mortgage loan servicers mail to borrowers each year under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605.

# <u>TABLE OF CONTENTS</u>

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT.................................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ..............................................i

TABLE OF CITATIONS ...........................................................................v

STATEMENT OF SUBJECT-MATTER AND APPELLATE
JURISDICTION ..............................................................................ix

STATEMENT OF THE ISSUES...............................................................1

STATEMENT OF THE CASE...................................................................3

i.    Statement of the Course of Proceedings and Disposition in the
      Court Below.............................................................................4

ii.   Statement of the Facts............................................................6

iii.  Standard of Review................................................................14

SUMMARY OF THE ARGUMENT ......................................................15

I.    Nationstar Complied With RESPA By Reviewing Every
      Transaction It Ever Processed For Mrs. Renfroe And Concluding
      That "All Transactions Appear To Be Correct."............................17

      A.    While Mrs. Renfroe Argues that Her Allegation of an Error
            Requires Nationstar to Agree and Pay Her a Refund, RESPA
            Does Not as a Matter of Law. ...........................................20

      B.    Whether an Investigation is "Reasonable" Depends on What
            the Servicer was Asked to Investigate and the Procedures
            Used as Shown in the Response Given. .............................28

            1.    <u>Taxes</u>: The complete payment history will show if any
                  property taxes were paid for Mrs. Renfroe, and, if so,
                  how much...................................................................32

2.  Amortization Period: The complete payment history's list of each payment and how it was applied (e.g., principal and interest) and running principal balance will show the term over which Mrs. Renfroe's loan was being amortized. ............................................................37

3.  Payment Increase: The complete payment history's list of all payments received and what they were applied to answers the questions whether there was an increase in the amount of the payments and, if so, why. ..........................................................................40

II.  Mrs. Renfroe Failed To Allege Damages Caused By Any Alleged RESPA Violation. ............................................................45

A.  The Cost of Sending a Qualified Written Request Letter Does Not Constitute Damages Caused by a RESPA Violation Because Such Costs Would Be Incurred With or Without a Violation. ..........................................................46

B.  The Failure to Refund Overpayments Caused by Allegedly Incorrect Collections Does Not Constitute Damages Because § 2605(e)(2)(B) Allows a Servicer to Explain an Account is Correct and Any Excess Collections Can be Obtained by a Breach of Contract Claim. ..............................................51

C.  There are No "Additional" Pattern and Practice Damages Because there are No Baselne Actual Damages and Because Four of the Five Alleged Pattern and Practice Letters Have No Description of the Requests or Responses. ......................54

CONCLUSION ........................................................................57

CERTIFICATE OF COMPLIANCE ..........................................59

CERTIFICATE OF SERVICE ..................................................60

ADDENDA

Margaret Renfroe Letter ......................................................1

Nationstar's Letters..........................................................................................2

Redline Comparison of Nationstar's Letters ...................................................3

# <u>TABLE OF CITATIONS</u>

## <u>Cases</u>

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009)................................. passim

*Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97
    (5th Cir. 1974) ................................................................................ 20, 26

*Baloco v. Drummond Co.*, 640 F.3d 1338 (11th Cir. 2011) .....................................22

*Bates v. JPMorgan Chase Bank, NA*, 768 F.3d 1126
    (11th Cir. 2014) ........................................................... 35, 39, 42, 52

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)......... passim

*Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) ...................................26

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364
    (11th Cir. 1997) .............................................................................19

*Buckentin v. SunTrust Mortg. Corp.*, 928 F. Supp. 2d 1273
    (N.D. Ala. 2013) .............................................................................46

*Catlin v. United States*, 324 U.S. 229, 65 S. Ct. 631 (1945) ................................... ix

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*,
    467 U.S. 837, 104 S. Ct. 2778 (1984) ........................................24

*Chiang v. Verizon New England Inc.*, 595 F.3d 26 (1st Cir. 2010)................. 28, 31

*Claxton v. Orlans Associates, P.C.*, No. 10-10813, 2010 U.S. Dist.
    LEXIS 88028 (E.D. Mich. Aug. 26, 2010) ...................................53

*Cortez v. Keystone Bank, Inc.*, No. 98-2457, 2000 WL 536666
    (E.D. Pa. May 2, 2000)............................................................ 49, 50

*Cushman v. Trans Union Corp.*, 115 F. 3d 220 (3d Cir. 1997).............................30

*Davis v. Greenpoint Mortg. Funding, Inc.*, No. 1:09-cv-2719-CC-LTW,
    2011 U.S. Dist. LEXIS 151993 (N.D. Ga. Sept. 19, 2011).........56

*Day v. Taylor*, 400 F. 3d 1272 (11th Cir. 2005) ....................................................19

v

*Dietz v. Benefit Loan and Thrift Co.*, No. 10-3752, 2011 U.S. Dist.
LEXIS 62285 (D. Minn. June 10, 2011) ......................................................46

*Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 112 S. Ct. 2589
(1992)..........................................................................................................24

*Freeport Sulphur Co. v. The S/S Hermosa*, 526 F.2d 300 (5th Cir. 1976)..............47

*Furry v. Miccosukee Tribe of Indians of Fla.*, 685 F.3d 1224
(11th Cir. 2012) ..........................................................................................20

*Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189 (11th Cir. 2007)...................................14

*Harris v. Ivax Corp.*, 182 F.3d 799 (11th Cir. 1999)..............................................19

*Hittle v. Residential Funding Corp.*, No. 2:13-cv-353, 2014 U.S. Dist.
LEXIS 107423 (S.D. Ohio Aug. 5, 2014) ....................................................43

*Horsley v. Feldt*, 304 F.3d 1125 (11th Cir. 2002) ..................................................19

*In re Tomasevic,* 273 B.R. 682 (Bankr. M.D. Fla. 2002) ........................................49

*Jackson v. Sauls*, 206 F.3d 1156 (11th Cir. 2000)..................................................47

*Johnson v. MBNA America Bank, NA*, 357 F.3d 426 (4th Cir. 2004) ....................29

*Johnson v. U.S. Mortg. Co.*, 951 F. Supp. 216 (M.D. Ala. 1996) ..........................18

*Johnstone v. Bank of America, N.A.*, 173 F. Supp. 2d 809
(N.D. Ill. 2001) ...................................................................................... 49, 50

*Justice v. Ocwen Loan Servicing*, No. 2:13-cv-165, 2015 WL 235738
(S.D. Ohio Jan. 16, 2015) ............................................................................49

*Kapsis v. Am. Home Mortg. Servicing, Inc.*, 923 F. Supp. 2d 430
(E.D. N.Y. 2013)..........................................................................................55

*Lal v. Am. Home Servicing, Inc.,* 680 F. Supp. 2d 1218
(E.D. Cal. 2010)...................................................................................... 48, 53

*Madura v. BAC Home Loans Servicing, LP*, 593 F. App'x. 834
(11th Cir. 2014) ...................................................................................... 45, 48

*Marais v. Chase Home Finance, LLC*, 24 F. Supp. 3d 712
    (S. D. Ohio 2014)...................................................................... passim

*Marais v. Chase Home Finance, LLC*, 736 F.3d 711 (6th Cir. 2013) ....................53

*McLean v. GMAC Mortg. Corp.*, 595 F. Supp. 2d 1360 (S.D. Fla. 2009) .............55

*McMillen v. Resurgent Capital Servs., L.P.*, No. 2:13-cv-00738,
    2014 WL 3341337 (S.D. Ohio July 8, 2014 ) ...............................................49

*Paschette v. Wells Fargo Bank, N.A.*, No. 6:11-cv-442, 2011 U.S. Dist.
    LEXIS 101677 (M.D. Fla. Sept. 8, 2011) ......................................................55

*Quinn v. Deutsche Bank Nat'l Trust Co.*, No. 13-0115-WS-C, 2014 U.S.
    Dist. LEXIS 32401 (S.D. Ala. Mar. 12, 2014).............................................18

*Russell v. Nationstar Mortgage, LLC*, No. 14-61977, 2015 WL 541893
    (S.D. Fla. Feb. 10, 2015) ................................................................................49

*Selman v. CitiMortgage, Inc.*, No. 12-0441-WS-B, 2013 U.S. Dist.
    LEXIS 37017 (S.D. Ala. Mar. 5, 2013).................................... 52, 53, 54, 56

*Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812 (5th Cir. 1940)....................26

*Soriano v. Countrywide Home Loans, Inc.*, No. 09-cv-02415-LHK,
    2011 U.S. Dist. LEXIS 59714 (N.D. Cal. June 2, 2011)..............................48

*Steele v. Quantum Servicing Corp.*, No. 3:12-CV-2897-L,
    2013 WL 3196544 (N.D. Tex. June 25, 2013)................................ 48, 49, 50

*Stevens v. CitiGroup, Inc.*, No. 00-3815, 2000 U.S. Dist. LEXIS 18201
    (E.D. Penn. Dec. 15, 2000)............................................................................46

*Tsakanikas v. JP Morgan Chase Bank N.A.*, No. 2:11-cv-888, 2012 U.S.
    Dist. LEXIS 172058 (S.D. Ohio Dec. 4, 2012)............................................50

W*hittaker v. Wells Fargo Bank, N.A.*, No. 6:12-cv-98-Orl-28GJK,
    2014 U.S. Dist. LEXIS 151087 (M.D. Fla. Oct. 22, 2014)........ 35, 39, 42, 48

*Wilson v. Bank of Am., N.A.*, 48 F. Supp. 3d 787 (E.D. Pa. Sept. 24, 2014)..........28

## Statutes

12 U.S.C. § 2605 ..................................................................... passim

15 U.S.C. § 1 .................................................................................21

15 U.S.C. § 1639f .................................................................... viii

15 U.S.C. § 1681s-2(b) ...............................................................28

28 U.S.C. § 636 ........................................................................ viii

28 U.S.C. § 1291 ......................................................................... ix

28 U.S.C. § 1331 ...................................................................... viii

28 U.S.C. § 1367 ...................................................................... viii

## Rules

Rule 4(a)(1), Fed. R. App. P. ...................................................... ix

Rule 10(c), Fed. R. Civ. P. .................................................... 20, 26

Rule 58, Fed. R. Civ. P. ............................................................... ix

## Regulations

12 C.F.R. § 1024.35 ............................................................... passim

78 Fed. Reg. 10746 (Feb. 14, 2013) .................................... 24, 52

## Other Authorities

*Black's Law Dictionary* 953 (10th ed. 2014)..........................................29

Dan B. Dobbs, *Remedies* 786 (1973)......................................................47

*Oxford English Dictionary Online*, *available at*
    http://www.oed.com/view/Entry/
    99038?redirectedFrom=investigation&.........................................29

## STATEMENT OF SUBJECT-MATTER
## AND APPELLATE JURISDICTION

Because Plaintiff-Appellant Margaret Renfroe's well-pleaded complaint asserted a civil claim under 12 U.S.C. § 2605, the Real Estate Settlement Procedures Act ("RESPA"), against Defendant-Appellee Nationstar Mortgage, LLC ("Nationstar"), the district court had subject-matter jurisdiction under 28 U.S.C. § 1331 (federal question). (Doc. 1-Compl. ¶¶ 18-27) ("Nationstar has violated 12 U.S.C. § 2605(e) by failing to respond to Plaintiff's QWR . . . ."); (Doc. 24-Am. Compl. ¶¶ 21-32) ("Nationstar has violated 12 U.S.C. § 2605(e) by failing to respond to Plaintiff's QWR . . . ."). The district court likewise had federal question jurisdiction under 28 U.S.C. § 1331 over Mrs. Renfroe's Truth In Lending Act ("TILA") claim under 15 U.S.C. § 1639f. (Doc. 1-Compl. ¶¶ 28-31.) And the district court had supplemental jurisdiction under 28 U.S.C. § 1367 over her breach of contract claims relating to the mortgage and note. (Doc. 1-Compl. ¶¶ 32-34.) Mrs. Renfroe did not include the TILA and breach of contract claims in her amended complaint that solely alleged a violation of RESPA. (Doc. 24-Am. Compl.)

On August 21, 2014, the case was referred to United States Magistrate Judge Bert W. Milling, Jr. (Dist. Ct. Dkt. Sheet); 28 U.S.C. § 636(b)(1)(B). On January 14, 2014, Magistrate Judge Milling entered a report and recommendation,

recommending that the district court dismiss Mrs. Renfroe's amended complaint without prejudice. (Doc. 32-Rep't and Rec.) On January 29, 2015, Mrs. Renfroe filed her objections to the report and recommendation. (Doc. 33-Obj. to Rep't and Rec.) On February 9, 2015, Nationstar filed its response to Mrs. Renfroe's objections. (Doc. 34-Resp. to Obj.) On February 10, 2015, United States District Judge Callie V.S. Granade entered an order adopting the report and recommendation as the opinion of the district court and dismissing the case without prejudice. (Doc. 35-Order.) On the same day, the district court entered a judgment on a separate document, dismissing the amended complaint without prejudice for failure to state a claim. (Doc. 37-Final J.); Fed. R. Civ. P. 58. The judgment was final because it disposed of the only claim of the only plaintiff, Mrs. Renfroe, thus ending the litigation on the merits. *See Catlin v. United States*, 324 U.S. 229, 233, 65 S. Ct. 631, 633 (1945) (holding that a final judgment "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment").

Also on February 10, 2015, Mrs. Renfroe filed her notice of appeal within the 30-day period of Rule 4(a)(1), Fed. R. App. P. (Doc. 38-Notice of Appeal.) This Court has jurisdiction over this appeal under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

Nine months after refinancing her mortgage loan, Margaret Renfroe wrote her prior mortgage loan servicer, Nationstar Mortgage, LLC ("Nationstar"), alleging that she may have been incorrectly charged for property taxes, improper amortization, or some other fee, and that her payment had been $100 too high. The Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605 requires a mortgage servicer, like Nationstar, to respond to a qualified written request, or notice of error, from a borrower, like Mrs. Renfroe.  The response must (a) make appropriate corrections, (b) explain that the account is correct after conducting an investigation, or (c) provide an explanation that states any information not provided is unavailable after conducting an investigation. *See* 12 U.S.C. § 2605(e)(2)(A)-(C); 12 C.F.R. § 1024.35. Nationstar conducted an investigation, found Mrs. Renfroe's account correct, and timely responded.

I.     Did Nationstar's response violate the duty to correct the account or conduct a reasonable investigation, when it provided (a) full disclosure of every payment it received from Mrs. Renfroe, (b) the description of every disbursement from each payment (e.g., for taxes, principal, interest, insurance, fees), and (c) that "all transactions appear to be correct"?

II.    Mrs. Renfroe made no payments to Nationstar after sending her inquiry letter in June 2014 because she had refinanced her loan and ceased making

1

payments to Nationstar nine months earlier in September 2013.  Did she allege damages caused by Nationstar's alleged violation of RESPA in June 2014 for:

A.  The cost of sending her inquiry letter (e.g., a postage stamp), which Mrs. Renfroe would have incurred with or without a RESPA violation?

B.  Nationstar's not providing a refund for 2011 to 2013 alleged overpayments, when Nationstar's investigation determined no refund was due? or

C.  Additional, pattern or practice damages, when there were no underlying actual damages and she provided no date, name, or response information for four of the five alleged pattern or practice borrowers?

## STATEMENT OF THE CASE

This case concerns whether a mortgage loan servicer, Nationstar, properly responded, under RESPA, to a qualified written request letter from a borrower, Mrs. Renfroe. Mrs. Renfroe's letter alleged her monthly payment had been $100 too high, possibly due to incorrect taxes, incorrect amortization period, or some other reason, and requested a substantial amount of information. (Doc. 24-Am. Compl. ¶ 11.) Nationstar's timely response:

(1) stated that Nationstar "did review the account, and all transactions appear to be correct from our records review";

(2) set forth each and every payment made by Mrs. Renfroe and each and every item each payment was disbursed for (i.e., taxes, principal, interest, insurance, fees) over the entire period that Nationstar serviced her loan;

(3) answered several specific requests for information, including the name of the owner of the loan when it was refinanced, the date it was refinanced, the payoff amount for the old loan; and

(4) provided the name and telephone number of an employee who could provide her additional assistance if she could pinpoint an error.

(Doc. 28-1, pp. 1-3, Nationstar's Resp. Ltrs.)

3

### i.    Statement of the Course of Proceedings
### and Disposition in the Court Below

Instead of contacting Nationstar with a specific error shown on the letter or its enclosures, Mrs. Renfroe filed this lawsuit on July 24, 2014, alleging a RESPA violation, a violation of the Truth in Lending Act ("TILA"), and a breach of contract. (Doc. 1-Compl. ¶¶ 18-34.)    Mrs. Renfroe later filed an amended complaint, alleging only a RESPA claim. (Doc. 24-Am. Comp.)

Nationstar moved to dismiss Mrs. Renfroe's amended complaint, arguing that she had failed to allege actual damages caused by any June 2014 RESPA violation because (1) the loan had been terminated in September 2013 and Nationstar accepted no money from her after that date; and (2) there was no obligation to refund money if Nationstar believed that no error in the account occurred.  (Doc. 26, pp. 5-12-Br. in Supp. of Mot. to Dismiss.)  Nationstar also argued that there were no additional statutory damages for "pattern or practice" of RESPA violations because there can be no "additional" damages if there are no basic actual damages and because the amended complaint's conclusory allegation of five form letters to unknown people at unknown times was insufficient to allege additional damages.  (*Id.* at pp. 13-16).

Mrs. Renfroe responded that she properly alleged that Nationstar violated RESPA with a boilerplate, unresponsive letter that did not correct her account or

4

show a reasonable investigation.  (Doc. 28, pp. 11-15-Resp. in Opp'n to Mot. to Dismiss.) She attached Nationstar's June 26, 2014 letter that her complaint referenced, but did not attach the eight enclosures the letter described. (Doc. 28-1, pp. 1-3-Nationstar's Resp. Ltrs.) She also attached one alleged "pattern and practice" letter, to Mr. Aaron James, that her amended complaint referenced, but did not provide Mr. James' request letter to Nationstar or any specifics on the other recipients' letters from Nationstar.  (*Id.* at pp. 4-6).

Magistrate Judge Bert W. Milling, Jr. issued a report and recommendation to dismiss the case without prejudice. (Doc. 32-Rep't & Rec.) The report and recommendation noted that Nationstar's response letter (1) stated that it enclosed a number of documents that should address Mrs. Renfroe's requests, (2) described the contents of the enclosed documents in detail, and (3) provided a contact person and telephone number for any questions. (*Id.* at pp. 5-7.)  Judge Callie V.S. Granade entered an order and a final judgment adopting the magistrate's report and recommendation and dismissed the case without prejudice.  (Doc. 35-Order; Doc. 37-Final J.)

Mrs. Renfroe filed her notice of appeal. (Doc. 38-Notice of Appeal.)

5

### ii.    Statement of the Facts

Margaret Renfroe is a retired banker who lives in her home in Mobile, Alabama. (Doc. 24-Am. Compl. ¶ 5.) On June 17, 2014, nine months after Nationstar ceased servicing her loan, Mrs. Renfroe wrote Nationstar a letter, indicating three possible errors in her account dating back to when Nationstar began servicing her loan in 2011 and requesting numerous items of information. (*Id.* at ¶ 11.)

She alleged that her total monthly payment increased by "around $100" (*id.* at ¶¶ 8, 11),  that incorrect charges for taxes (from which she claims an exemption) may or may not have been the cause of the $100 increase (*id.* at ¶ 11), and that her loan may have been amortized over 40 years instead of the correct 30-year term, (*id.*)  She also asked for numerous items of information, including a complete payment history and the payment history from the prior servicer. (*Id.*) (Mrs. Renfroe's letter-Addendum 1.)

**Nationstar Responds with Full Disclosure of Every Payment and How it was Applied to Taxes, Principal, Interest, Insurance, and Fees, Concluding that "All Transactions Appear To Be Correct."**

On June 26, 2014, Nationstar responded to Mrs. Renfroe with a 3-page letter with 8 enclosures. (Doc. 28-1, pp.1-3, Nationstar Resp. Ltrs.) (Nationstar's letters-Addendum 2) described several enclosures that Nationstar believed would address Mrs. Renfroe's questions:

### Questions Asked and Answers Given

| Mrs. Renfroe's Request Letter | Nationstar's Response Letter |
|---|---|
| "First, when you assumed the servicing of my loan, which I believe was sometime in 2011, you <u>increased my monthly payments by $100.00</u>. | "[T]he information below and enclosed documents should address any of your relevant questions and requests. Enclosed, you will find the following documents:<br><br>• Payment History<br>   o [A] <u>complete history for the period Nationstar has serviced the loan</u>. . . . [T]his Payment History reflects:<br><br>    . . . .<br>    ▪ <u>How the payments were applied</u> to the loan [i.e., principal, interest, etc.]<br>    . . . .<br><br>    ▪ A <u>description for each transaction</u>, with <u>running balances of the unpaid principal</u> and <u>escrow accounts</u> |
| "I believe that you were charging me escrow for <u>tax payments</u> which were never due.  <u>This may explain the $100.00 increase</u> <u>or it may not.</u> |    o  . . . [T]his Payment History reflects:<br>    . . . .<br>    ▪ <u>Any disbursements</u> made from the loan, including, but not limited, disbursements for <u>taxes,</u> |
| "I believe that you applied the wrong <u>amortization</u> formula [40 v. 30 years] when calculating my payments [i.e., principal and interest]. . . . I believe that this resulted in a larger <u>payoff</u> that I had to pay when I refinanced the loan last September . . .<br><br>"[P]lease provide the | ▪ Note  [includes principal amount of debt,  term of the note (e.g., 30 years or 40 years), interest rate, payoff date)] and Security Instrument<br>    . . . .<br>• Payment History<br>   o  . . . [T]his Payment History reflects:<br>    . . . .<br>    ▪ <u>How the payments were applied</u> to the loan [i.e., principal, interest, etc.]<br>    . . . .<br>    ▪ A <u>description for each transaction</u>, with <u>running balances of the unpaid principal</u> and |

| | |
|---|---|
| following information:<br><br>. . . .<br><br>▪ Detailed explanation of how the pay-off amount . . . was calculated . . . .<br>(Doc. 24, p. 3-Am. Compl. ¶ 11) (emphases added) | escrow accounts . . . .<br><br>. . . .<br><br>▪ Most Recent Billing Statement<br><br>○    The Billing Statement will reflect the last amount due on the loan prior to payoff, and will also provide a breakdown of any fees assessed, including any lender paid expenses . . . .<br><br>[W]e did review the account, and all transactions appear to be correct from our records review.<br><br>(Doc. 28-1, pp.1-3, Nationstar Resp. Ltrs.) (emphases added) . |

## Information Requested and Information Provided

| Mrs. Renfroe's Request Letter | Nationstar's Response Letter |
|---|---|
| "[P]lease provide the following information:<br><br>▪ Complete payment history of the loan showing how each payment was applied and identifying all fees and other charges collected in connection with my loan from its inception until it was paid off in September 2013; | • Payment History<br>  ○  [A] complete history for the period Nationstar has serviced the loan. . . . [T]his Payment History reflects:<br><br>. . . .<br>    ▪ How the payments were applied to the loan [i.e., principal, interest, etc.] |
| ▪ A complete history of all disbursements made by you from my escrow account and all monies collected by | ▪ Any disbursements made from the loan, including, but not limited, disbursements for taxes, insurance, property inspections, broker's price opinions (BPOs), and legal |

| | |
|---|---|
| you for escrow; | fees<br><br>▪ <u>A description for each transaction</u>, with <u>running balances</u> of the unpaid principal and escrow accounts |
| ▪ A detailed explanation of <u>each payment increase</u> and the reasons for the increase; | ○ [A] <u>complete history for the period Nationstar has serviced the loan</u>.<br>. . . .<br><br>▪ <u>A description for each transaction</u>, with <u>running balances</u> of the unpaid principal and escrow accounts |
| ▪ A list of each and <u>every payment for taxes</u> you made from the my (sic) escrow account, giving the date and amount of each payment.  Also identify each and every refund you received in connection to a tax payment. | ▪ <u>Any disbursements</u> made from the loan, including, but not limited, disbursements for <u>taxes</u>, insurance, property inspections, broker's price opinions (BPOs), and legal fees |
| ▪ State whether you believe that there has been a lapse of homeowner's <u>insurance</u>, state the dates of each alleged lapse and state the date you claim you notified me of the lapse, if any; | ▪ <u>Any  disbursements</u>  made  from  the  loan, including,  but  not  limited,  disbursements  for taxes,      <u>insurance</u>,      property      inspections, broker's  price  opinions  (BPOs),  and  legal fees" |
| ▪ Description of <u>how my payments were calculated from the beginning of the loan</u> to when it was paid, including explanation of <u>how the payments were</u> | • Payment History<br>○ [A] <u>complete history for the period Nationstar has serviced the loan</u>. . . . [T]his Payment History reflects: |

| | |
|---|---|
| amortized. | ▪ When payments were received<br><br>▪ How the payments were applied to the loan [i.e., principal, interest, etc.]<br><br>▪ Any disbursements made from the loan, including, but not limited, disbursements for taxes, insurance, property inspections, broker's price opinions (BPOs), and legal fees<br><br>▪ A description for each transaction, with running balances of the unpaid principal and escrow accounts<br>. . . .<br>You asked us to provide the prior servicer loan history.  After conducting an investigation, Nationstar is unable to locate the information you requested.  This information is unavailable. |
| ▪ Detailed explanation of how the pay-off amount you provided in connection with the refinance of the loan was calculated and an itemized breakdown of that figure; | ▪ Most Recent Billing Statement<br><br>  o The Billing Statement will reflect the last amount due on the loan prior to payoff, and will also provide a breakdown of any fees assessed, including any lender paid expenses. . . . |
| ▪ State whether you have ever calculated my payments based on a maturity date other than June 1, 2036.  If so, state when such calculation started and how many payments you collected from me based on that calculation. | ▪ Note and Security Instrument [includes the term of the note (e.g., 30 years or 40 years), interest rate, payoff date)]<br>. . . .<br>● Payment History<br>  o [A] complete history for the period Nationstar has serviced the loan.. . . [T]his Payment History reflects:<br>. . . .<br>    ▪ How the payments were applied to the loan [i.e., principal, interest, etc.] |

| | |
|---|---|
| ▪ State the <u>date you first became the servicer of the loan</u>; and | ▪ Notice of Servicing Transfer, also known as a Welcome Letter<br><br>o  The Servicing Transfer Notice will detail the <u>date</u> and terms of the service <u>transfer from the prior servicer to Nationstar</u>.  This document evidences Nationstar's right to service the loan. |
| ▪ Identify the <u>owner of the loan at the time it was paid in full</u>."<br><br>(Doc. 24-Am. Compl. ¶ 11) (emphases added). | "Furthermore, our records indicate <u>American General S05 was the owner of the note prior to payoff</u>."<br><br>(Doc.   28-1,   pp.1-3,   Nationstar   Resp.   Ltrs.) (emphases added). |

After stating that Nationstar had reviewed her account and found that "all transactions appear to be correct," Nationstar's June 26, 2014 response letter gave the name and telephone number of a customer relations specialist, De'Marco Jefferson, for Mrs. Renfroe to call: "*If you think there is an error* in the servicing of the account, *please let us know* so that we can investigate and resolve any potential servicing error."  (Doc. 28-1, p. 3, Nationstar's Resp. Ltrs.) (emphases added). Instead of calling Nationstar to pinpoint some error, Mrs. Renfroe filed this lawsuit on July 24, 2014. (Doc. 1-Compl.)

**Mrs. Renfroe Alleged Damages of a Postage Stamp, the Refund of Alleged Overpayments, and an Alleged Pattern and Practice of Unidentified Letters to Unidentified People at Unknown Dates.**

Mrs. Renfroe alleged that she incurred actual damages in the form of not being refunded her alleged overpayments. (Doc. 24-Am. Compl. ¶ 20.) She also alleged that she incurred actual damages in the form of expenses in sending her letter to Nationstar (e.g., the cost of a postage stamp). (*Id.*)

She also alleged "additional," "pattern and practice" damages based on her allegations of five form letters Nationstar sent to "borrowers in Birmingham, Alabama, Mobile, Alabama and Lexington, Maryland." (*Id.* at. ¶¶ 15-16.)  For four of the alleged borrowers, Mrs. Renfroe provided no information regarding the name of the borrowers, the dates of the letters, the questions they asked Nationstar, or Nationstar's response, except that "Nationstar has used the same generic form letters to respond" to such unidentified persons.   (*Id*. ¶ 16.)  Mrs. Renfroe did, however, provide one Nationstar response letter to a Mr. Aaron James of Theodore, Alabama, in Mobile County.  (*Id.* at. ¶¶ 15-16) (referring to borrower in Mobile, Alabama who received a Nationstar response letter) (Doc. 28-1, pp. 4-6, Renfroe's Resp. Ltrs.)

A redline comparison of Nationstar's letter to Mrs. Renfroe and its letter to Mr. James (see Addendum 3 to this Brief)[1] shows that Nationstar provided both borrowers with the note and security instrument, a complete payment history, the most recent billing statement, a payoff quote, and the name and number of a Nationstar employee to contact with any further questions.  (Doc. 28-1, pp. 1-6, Nationstar Resp. Ltrs.) The redline also shows that unlike Nationstar's letter to Mr. James, Nationstar's letter to Mrs. Renfroe included four additional items that specifically responded to her individual, unique requests:

1. A notice of servicing transfer (Doc. 28-1, p. 2, Nationstar Resp. Ltrs.), which responded to Mrs. Renfroe's question concerning the date that Nationstar began servicing her loan (Doc. 24-Am. Compl. ¶ 11);

2. The most recent escrow analysis statement (Doc. 28-1, p. 2, Nationstar Resp. Ltrs.), which responded to her question regarding escrow disbursements (Doc. 24-Am. Compl. ¶ 11);

3. The identity of the owner of Mrs. Renfroe's note prior to payoff (Doc. 28-1, p. 3, Nationstar Resp. Ltrs.), which responded to her question about the owner's identity (Doc. 24-Am. Compl. ¶ 11); and

4. The statement that Nationstar had searched for prior servicer history but that such information was unavailable (Doc. 28-1, p. 4, Nationstar Resp. Ltrs.), which responded to her request for payment history before Nationstar serviced the loan (Doc. 24-Am. Compl. ¶ 11).

---

[1] The redline comparison of Nationstar's response letter to Mrs. Renfroe (Doc. 28-1, pp. 1-3-Nationstar's Resp. Ltrs.) and Nationstar's response letter to Mr. James (*id.* at pp. 4-6) was not in the record on appeal, but was prepared from the two record documents to show the differences between the two letters.

13

### iii. Standard of Review

Reviewing the judgment dismissing Mrs. Renfroe's amended complaint requires three steps.  First, in *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950 (2009), the Supreme Court stated "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."

Second, in *Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007), this Court explained that when dealing with a complaint that has exhibits that contradict allegations in the complaint, a court's "duty to accept the facts in the complaint as true does not require [the court] to ignore specific factual details of the pleading in favor of general or conclusory allegations." "Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Id.* at 1206.

Third, once the allegations that are conclusory or contradicted by exhibits are discarded, where a complaint pleads facts that are merely consistent with both a violation of a statute and with no violation, the complaint "stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1950.

14

# SUMMARY OF THE ARGUMENT

This Court should affirm because Mrs. Renfroe's amended complaint fails to allege a plausible claim of failure to correct her account, unreasonable investigation, or of damages. Mrs. Renfroe's complaint and Nationstar's response letter show that Nationstar reviewed her qualified written response, retrieved her file, reviewed her documents, determined the account was correct, answered her questions by disclosing her payment history that showed and described every transaction that Nationstar had processed for her (e.g., principal, interest, taxes (if any), insurance, and fees), and provided the contact information of a Nationstar employee who could answer any additional questions she might have.

The specifics in Nationstar's response letter trump the conclusory allegations of an incorrect account, no reasonable investigation, and no explanation. *See Griffin Indus.,* 496 F.3d at 1205-06.  Mrs. Renfroe's allegation that Nationstar erred by not correcting her account is a mere recitation of an element of the claim and not entitled to the presumption of truth. *See Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950. Further, 12 U.S.C. § 2605(e)(2) and 12 C.F.R. § 1024.35 provide that a servicer may either respond that it has corrected the account or that it believes the account is correct.

Mrs. Renfroe's questions whether taxes should appear on her statement at all, whether the principal and interest portion of her monthly payment should be

15

other than $998.68, and whether her payment should increase for any reason were all answered. Nationstar sent her the payment history that explained to the penny if taxes ever cost her money, if principal and interest ever totaled something different than $998.68, and if any payment differed from another payment that she ever made to Nationstar. Nationstar also stated: "[W]e did review the account, and all transactions appear to be correct." The allegations in the letter are consistent with and more likely to mean no RESPA violation occurred. Under *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950, where the alleged conduct is consistent with no violation of a law and with a violation of law, the allegation of an unreasonable investigation is not plausible.

Independently, Mrs. Renfroe's RESPA claims fail because they do not allege damages. Her allegations of damages for the cost of sending her inquiry letter fail because she would have incurred those costs whether there was a subsequent violation of RESPA or not. Her allegations of damages for the amount of refund Nationstar allegedly should have made to her fail because neither § 2605 nor 12 C.F.R. § 1024.35 requires a servicer to correct an account it believes to be correct already. And her allegations for additional pattern or practice damages fail because they are contradicted by the one "pattern or practice" letter Mrs. Renfroe submitted and the allegations about other letters are conclusory. *See Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950.

16

## ARGUMENT AND CITATIONS OF AUTHORITY

**I.    Nationstar Complied With RESPA By Reviewing Every Transaction It Ever Processed For Mrs. Renfroe And Concluding That "All Transactions Appear To Be Correct."**

Mrs. Renfroe's amended complaint fails to allege a plausible RESPA violation. Of the numerous allegations in her complaint, Mrs. Renfroe selects to argue on appeal that Nationstar violated 12 U.S.C. § 2605 and 12 C.F.R. § 1024.35(e)(1) (part of "Regulation X") by not correcting her account and refunding alleged overpayments, by not conducting a reasonable investigation of taxes, amortization period, or overpayments, and by not providing all the information she requested. (Renfroe's Br. 11-12, 14, 18-19.)

Mrs. Renfroe asked about a payment increase of $100 per month, whether she was charged for taxes, and whether her amortization was calculated based on a 40-year term instead of the correct 30-year term. (Doc. 24-Am. Compl. ¶ 11.) Nationstar responded as follows:

> [T]he information below and enclosed documents should address any of your relevant questions and requests. Enclosed, you will find the following documents:
>
> • Note [includes principal amount of debt, term of the note (e.g., 30 years or 40 years), interest rate, payoff date)][2] and Security Instrument

---

[2] Notes for home mortgage loans, like notes generally, contain the principal amount to be repaid, the period over which repayment will occur (the term), and the interest rate to be charged on the unpaid principal balance. *See, e.g., Quinn v.*

17

. . . .

- Payment History

    o [A] <u>complete history for the period Nationstar has serviced the loan</u>. . . . [T]his Payment History reflects:

. . . .

    ▪ <u>How the payments were applied</u> to the loan [i.e., principal, interest, etc.]

    ▪ <u>Any disbursements</u> made from the loan, including, but not limited to, disbursements for <u>taxes</u>, insurance, . . .

    ▪ A <u>description for each transaction</u>, within <u>running balances of the unpaid principal</u> and <u>escrow accounts</u>

    . . . .

- Most Recent Billing Statement

    o The Billing Statement will reflect the <u>last amount due on the loan prior to payoff,</u> and will also provide a breakdown of any fees assessed, including any lender paid expenses . . . .

    . . . .

You asked us to provide the <u>prior servicer loan history</u>. After conducting an investigation, Nationstar is unable to locate the information you requested. This information is <u>unavailable</u>. However,

---

*Deutsche Bank Nat'l Trust Co.*, No. 13-0115-WS-C, 2014 U.S. Dist. LEXIS 32401, *4-*5 (S.D. Ala. Mar. 12, 2014) (stating that parties took out "a mortgage loan for their primary residence" and executed a "30-year note at an initial interest rate of 10.35%"); *Johnson v. U.S. Mortg. Co.*, 951 F. Supp. 216, 217 (M.D. Ala. 1996) ("The Promissory Note ('note') mirrored the mortgage agreement with regard to the principal debt, monthly payments, and interest rate.").

<u>we did review the account</u>, and <u>all transactions appear to be correct from our records review</u>. If you think there is an error in the servicing of the account, please let us know so that we can investigate and resolve any potential servicing error."

(Doc. 28-1, pp.1-3, Nationstar Resp. Ltrs.) (emphases added).

Mrs. Renfroe chose not to include the enclosures that Nationstar attached to its response letter in her response to the district court.[3]   Nonetheless, she admits that "Nationstar provided a copy of the note, the mortgage and a copy of the most recent statement[,] basic loan documents . . . ."  (Doc. 24-Am. Compl. ¶ 14.) She

---

[3] Mrs. Renfroe referenced Nationstar's June 26, 2014 response letter in her amended complaint.  (Doc. 24-Am. Compl. ¶ 12) ("On June 26, 2014, Nationstar responded to Mrs. Renfroe's QWR . . . ."); (*id.* at ¶ 13) ("Nationstar's letter predominantly consists of boilerplate language . . . ."); (*id.* at ¶ 14) ("In response to Renfroe's request, Nationstar provided  . . . basic loan documents . . . .").  She submitted it with her brief in opposition to Nationstar's motion to dismiss. (Doc. 28-1-Nationstar's Resp. Ltrs.) Because Mrs. Renfroe's amended complaint alleges violations of 12 U.S.C. § 2605(e) and (k) (Doc. 24-Am. Compl. ¶¶ 30-31), regarding the adequacy of a mortgage loan servicer's response to a qualified written request and a notice of error, Nationstar's response letter is central to this case. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (per curiam) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment"); *Day v. Taylor*, 400 F. 3d 1272, 1276 (11th Cir. 2005) ("[A] document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, we may consider such a document provided it meets the centrality requirement imposed in *Horsley. Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999) . . . .").

does not mention the other enclosures, or allege that the enclosures were confusing, illegible, or did not contain the detailed information that Nationstar's letter describes. (*Id.*) At the motion to dismiss stage, Nationstar's letter's descriptions of the enclosures must be taken as true. *See Furry v. Miccosukee Tribe of Indians of Fla.*, 685 F.3d 1224, 1226 n.2 (11th Cir. 2012) ("Because this case was decided on a motion to dismiss, we take as true the facts as alleged in Furry's complaint and attached exhibits."); *Griffin Indus.,* 496 F.3d at 1206 ("[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern."); *Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) ("If the appended document, to be treated as part of the complaint for all purposes under Rule 10(c), Fed. R. Civ. P., reveals facts which foreclose recovery as a matter of law, dismissal is appropriate.") (Citation omitted.)

> **A.   While Mrs. Renfroe Argues that Her Allegation of an Error Requires Nationstar to Agree and Pay Her a Refund, RESPA Does Not as a Matter of Law.**

Mrs. Renfroe argues on appeal that Nationstar failed to refund monies to her and thus violated RESPA and does not have an unfettered right to choose which option under § 2605(e)(2) and § 1024.35(e)(1) it prefers. (Renfroe's Br. 12-14, 19.) *Twombly* and *Iqbal* begin with the elements of the legal claim and discard conclusory allegations that simply recite one or more of the elements.

20

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 551, 127 S. Ct. 1955, 1963 (2007), the plaintiffs alleged a violation of the Sherman Act, 15 U.S.C. § 1, — a "conspiracy . . . in restraint of trade." "[T]he plaintiffs in *Twombly* flatly pleaded that the defendants 'ha[d] entered into a contract, combination or conspiracy to prevent competitive entry . . . and had agreed not to compete with one another.'" *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (describing and quoting *Twombly*, 550 U.S. at 551, 127 S. Ct. at 1963). "The Court held . . . that the plaintiffs' assertion of an unlawful agreement was a 'legal conclusion; and, as such, was not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680, 129 S. Ct. at 1950 (describing and quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1970).

In *Iqbal*, 556 U.S. at 669, 129 S. Ct. at 1951, the plaintiff alleged in a *Bivens* action "that [the former attorney general and the FBI Director] 'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest.'" The Supreme Court held "[t]hese bare assertions, much like the pleading of conspiracy in *Twombly*, amount to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim . . . . As such, the allegations are conclusory and not entitled to be assumed true." *Id.* at 681.

21

RESPA provides that a servicer shall (A) "make appropriate corrections in the account of the borrower . . . ," (B) "after conducting an investigation, provide the borrower with a written explanation or clarification that includes— (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer . . . , _or_ (C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes— (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer . . . ." 12 U.S.C. § 2605(e)(2). Similarly, Regulation X (12 C.F.R. § 1024.35(e)(1)(i)(A) and (B)) provide that "a servicer must respond to a notice of error by _either_: (A) Correcting the error or errors identified by the borrower . . . _or_ (B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination . . . ." (Emphases added.)

By using the disjunctive "or" among the subparagraphs of § 2605(e)(2) and § 1024.35(e)(1)(i) — § 2605(e)(2)(A), (B), "<u>or</u>" (C) and § 1024.35(c)(1)(i)(A) "<u>or</u>" (B) — Congress and the Consumer Fraud Protection Bureau (the "Bureau") indicated the servicer is not required to choose subparagraph (A). *See Baloco v. Drummond Co.*, 640 F.3d 1338, 1347 (11th Cir. 2011) ("This circuit has held that

22

the use of the disjunctive 'or' in statutes should be read as creating two different alternatives that should be treated separately.").

Further, under § 2605(e)(2)(B) and § 1024.35(e)(1)(i)(B), it is what the servicer "believes" and the servicer's "determination" that counts, not a final determination of whether the account is correct by a court of law. Neither Congress (nor the Bureau) intended to federalize breach of contract law for mortgage loans. Neither RESPA nor Regulation X creates a private cause of action simply because a servicer is mistaken. Mrs. Renfroe is fundamentally wrong in arguing that the Servicer must be absolutely correct in choosing the "most appropriate" option based on the plaintiff's view or 20-20 hindsight. In short, RESPA requires an investigation to be reasonable, not perfect.

This common sense approach is buttressed by the Bureau's consideration and rejection of a proposal to amend Regulation X to make a servicer's inaccurate determination that an account is correct a violation — exactly what Mrs. Renfroe proposes here:

> One consumer group commenter requested that the Bureau amend the proposed rule to address situations in which servicers make *inaccurate determinations that no error occurred*. The Bureau believes that, as proposed, *the rule adequately addresses such scenarios by requiring disclosures about borrowers' rights to request the information* on which the servicer relied, so as to facilitate the borrower's opportunity to review and consider further action as appropriate. . . . [T]he Bureau is adopting § 1024.35(e)(1)(i)(B) as proposed . . . .

23

78 Fed. Reg. 10746 (Feb. 14, 2013) (emphases added).[4]

Mrs. Renfroe contends that the following passage from *Marais v. Chase Home Finance, LLC*, 24 F. Supp. 3d 712, 722 (S. D. Ohio 2014), means that Nationstar cannot choose Option (B) — to explain why the account is correct:

> It would, for instance, hardly be broad or liberal construction (as is required for remedial statutes like RESPA) to say that *a servicer, presented with a truthful allegation that an account was incorrect, could respond by providing information confirming the error* (thereby plausibly meeting 12 U.S.C. § 2605(e)(2)(C) [regarding requests for information]) *but doing nothing about it.*

(Emphases added) (footnote omitted).

But Nationstar did not confirm that there was an error in Mrs. Renfroe's account and then do nothing about it. Instead, Nationstar's letter stated: "[W]e did review the account, and all transactions appear to be correct from our records review." (Doc. 28-1, p. 3-Nationstar's Resp. Ltrs.)

*Marais*, 24 F. Supp. 3d at 722, also states: "Nor would it make sense to allow a servicer to *choose to explain a sham or unreasonable belief* that the

---

[4] Had the Bureau interpreted "investigation" and the reasons a servicer "believes" an account is correct to require finding with absolute accuracy any breach of a mortgage, its interpretation would have violated the Administrative Procedures Act as contrary law — the plain and unambiguous statute. *See Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 476, 112 S. Ct. 2589, 2594 (1992) ("[A] reviewing court should not defer to an agency position which is contrary to an intent of Congress expressed in unambiguous terms.") (Citing *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43, 104 S. Ct. 2778, 2781-82 (1984)).

24

account is correct (thereby plausibly meeting the letter of 12 U.S.C. § 2605(e)(2)(B)) rather than correcting the account pursuant to 12 U.S.C. § 2605(e)(2)(A)." (Emphasis added.)  But Nationstar did not explain a sham or unreasonable belief (e.g., a late fee for a payment that was not late, a charge imposed by a service provider for a service that was not actually rendered), and Mrs. Renfroe does not allege that it did.  *See* CFPB Commentary on 12 C.F.R. § 1024.35, 78 Fed. Reg. 10889 (Feb. 14, 2013).

Instead, Nationstar provided Mrs. Renfroe with her complete payment history showing each payment and whether it increased from the last month, showing applications of her payment to "taxes," if any, and showing the portions of her payment applied to principal and interest (along with the note showing the interest rate) allowing the calculation of the amortization term.  (Doc. 28-1, pp. 1-3, Nationstar's Resp. Ltrs.) Then Nationstar explained "we did review the account, and all transactions appear to be correct from our records review." (Doc. 28-1, p.3-Nationstar's Resp. Ltrs.) And Nationstar stated: "If you think there is an error in the servicing of the account, please let us know so that we can investigate and resolve any potential servicing error" and provided the name and telephone number of a customer relations specialist, De'Marco Jefferson, for her to call.  (*Id.* at p. 3.)

Mrs. Renfroe's argument that the Court must take her allegation that there is an error in her account, (Doc. 24-Am. Compl. ¶ 30), "as true at this stage,"

25

(Renfroe's Br. 19) is contradicted by *Iqbal*. Mrs. Renfroe's conclusory allegation that there was an error that Nationstar was required to correct is a mere recitation of an element of the violation and need not be taken as true. *See Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950.

The enclosures described in Nationstar's letter, including the complete payment history, trump the general allegations in Mrs. Renfroe's amended complaint that the letter was non-responsive boilerplate. *See Griffin Indus.,* 496 F.3d at 1205-06 ("[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.").[5]

Moreover, Nationstar's sending Mrs. Renfroe her specific payment history and concluding that "all transactions appear to be correct," is consistent with, and more likely to be, no violation under § 2605(e)(2)(B) and § 1024.35(e)(1)(i)(B). In *Twombl*y, 550 U.S. at 554, 127 S. Ct. at 1964, the Supreme Court held that

---

[5] *See Associated Builders,* 505 F.2d at 100 ("Conclusory allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are contradicted by facts disclosed by a document appended to the complaint.  If the appended document, to be treated as part of the complaint for all purposes under Rule 10(c), Fed. R. Civ. P., reveals facts which foreclose recovery as a matter of law, dismissal is appropriate.") (citation omitted); *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940) ("Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control."); *see also Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (adopting as binding precedent the decisions of the former Fifth Circuit issued before October 1, 1981).

plaintiffs failed to state a plausible claim of an agreement or conspiracy not to compete under the Sherman Act, where they alleged "parallel conduct" that was "consistent with conspiracy [i.e., a violation], but just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market [i.e., no violation]."

In *Iqbal*, 556 U.S. at 681, 129 S. Ct. at 1951, the Supreme Court held that the plaintiff failed to allege a plausible claim of unconstitutional discrimination based on race where he alleged his arrest and detention with other Arab men that was "consistent with [FBI Director and former Attorney General's] purposefully designating detainees 'of high interest' because of their race [i.e., a violation]," and with the "legitimate policy directing law enforcement to arrest and detain individuals because of their suspected link to the [9-11] attacks . . . [i.e., no violation]." *Id.* at 941.

Under *Twombly* and *Iqbal*, Mrs. Renfroe's allegation that Nationstar did not correct her account (Doc. 24-Am. Compl. ¶ 20) fails to state a plausible § 2605 or Regulation X claim. This allegation is possibly consistent with there being an error that Nationstar purposely failed to correct (i.e., a violation). "[B]ut [the allegations are] just as much in line with" there being no error to correct (i.e., no violation and the more likely rationale). *Twombly*, 550 U.S. at 554, 127 S. Ct. at 1964. Accordingly, dismissal was proper.

27

**B.    Whether an Investigation is "Reasonable" Depends on What the Servicer was Asked to Investigate and the Procedures Used as Shown in the Response Given.**

Section 2605(e)(2) and (k) require a servicer that receives a qualified written request and notice of error to conduct an "investigation," Regulation X (§ 1024.35(e)(1)) has clarified that this should be a "reasonable" investigation. Neither the statute nor the regulation, however, define what a "reasonable investigation" is.

Mrs. Renfroe relies on *Wilson v. Bank of Am., N.A.*, 48 F. Supp. 3d 787, 804 (E.D. Pa. 2014), for the proposition that the 2013 amendment to Regulation X, which added the adjective "reasonable" to investigation, "altered the landscape" for servicers responding to notices of error. (Renfroe Br. 17.) This argument fails because it assumes that § 2605(e)(2)(B) & (C) allowed servicers to conduct "*un*reasonable" investigations before the Regulation X amendment. The First and Fourth Circuits rejected an "unreasonable investigation" for a similar federal consumer protection statute and interpreted the lone statutory word "investigation" to require a "reasonable investigation." *See, e.g., Chiang v. Verizon New England Inc.*, 595 F.3d 26 (1st Cir. 2010) (interpreting the statutory term "investigation" in Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), to mean "reasonable investigation" and citing *Johnson v. MBNA America Bank, NA*, 357 F.3d 426, 430-31 (4th Cir. 2004)); *Johnson*, 357 F.3d at 430-31 ("It would make little sense to

28

conclude that, in creating a system intended to give consumers a means to dispute — and, ultimately, correct — inaccurate information on their credit reports, Congress used the term 'investigation' to include superficial, *un*reasonable inquiries by creditors.").

Likewise, Nationstar does not contend that RESPA's legal bar is so low that even if its investigation was *un*reasonable, it passes muster under RESPA, a consumer protection statute designed to "provid[e] timely and accurate information" to borrowers. *See* 12 C.F.R. §§ 1024.35(b)(1); 1024.38(b). Instead, it contends that its investigation was a reasonable response to Mrs. Renfroe's specific letter of inquiry.

A practical, working definition[6] of "reasonable investigation" should focus on the nature of the inquiry from the borrower and the procedures used by the servicer to respond. *See Chiang*, 595 F.3d at 38 ("[W]hat is a reasonable investigation by a furnisher [of information to a credit reporting agency ("CRA"),

---

[6] Dictionary definitions are somewhat helpful, but not determinative. *See, e.g., Oxford English Dictionary Online* (defining "investigation" as "[t]he action of investigating; the making of a search or inquiry; systematic examination; careful and minute research"), *available at* http://www.oed.com/view/Entry/99038?redirectedFrom=investigation&; *Black's Law Dictionary* 953 (10th ed. 2014) (defining "investigation" as "[t]he activity of trying to find out the truth about something, such as a crime, accident, or historical issues; esp., such as a crime, accident, or historical facts, as by a legislative committee, or a systematic examination of some intellectual problem or empirical question, as by mathematical treatment or use of the scientific method").

under the Fair Credit Reporting Act,] may vary depending on the circumstances."[7] "[T]he central inquiry . . . is whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute.").[8]

"For instance, a more limited investigation may be appropriate when CRAs provide the furnisher with vague or cursory information about a consumer's dispute." *Chiang*, 595 F. 3d at 38. By contrast, "once a claimed inaccuracy is pinpointed, a consumer reporting agency . . . can target its resources in a more efficient manner and conduct a more thorough investigation." *Cushman v. Trans Union Corp.*, 115 F. 3d 220, 224-25 (3d Cir. 1997).

Similarly, Regulation X provides that a servicer need not even respond to an overbroad request. *See* 12 C.F.R. § 1024.35(g)(1)(ii) ("A servicer is not required to comply with the requirements of paragraphs . . . (e) [conducting a reasonable investigation] . . . of this section if the servicer reasonably determines that . . . [t]he notice of error is overbroad."). This makes sense because a qualified written

---

[7] Both the Fair Credit Reporting Act and RESPA allow a regulated entity "flexibility" in determining its investigation procedures. *See Chiang*, 595 F.3d at 38; CFPB Commentary on § 1024.38(b), 78 Fed. Reg. 10893 (Feb. 14, 2013).

[8] *See generally McLean v. GMAC Mortg. Corp.*, No. 09-11054, 398 Fed. Appx. 467, 2010 U.S. App. LEXIS 20234, *9 (11th Cir. Sept. 30, 2010) (unpublished) (interpreting damages provision of RESPA, 12 U.S.C. § 2605(f), with reference to other federal consumer-protection statutes, including TILA and the Fair Housing Act).

response that resembles an overbroad, lawyer-drafted discovery request in federal court should not require a servicer to hire a lawyer to draft a response, deliver mounds of production, and be held to violate RESPA because the borrower chooses to file a lawsuit instead of responding by pinpointing an error. The communication required by RESPA should result in more out-of-court resolutions, not more lawsuits.

In *Chiang*, 595 F.3d at 36, a consumer alleged his account was incorrect and that a reasonable investigation would have revealed inaccuracies in his account. In affirming summary judgment for the credit reporting agency, the court of appeals stated that "Chiang's allegations are consistent with Verizon NE [the furnisher of information to the credit reporting agency] having reviewed his account and billing history and confirmed that the factual information, while disputed, was nonetheless accurate." *Id.*

Nationstar's response letter, which answers specific questions (e.g., who owned the loan when it was paid off, is prior servicer history available) shows that it read Mrs. Renfroe's inquiry letter and requested everything. (Doc. 28-1-Nationstar's Resp. Ltrs., pp. 1-3) (Doc. 24-mend. Compl. ¶ 11.) Nationstar's response letter shows that it retrieved numerous documents from her file, reviewed those documents (which covered every transaction it had ever processed for her), concluded that "all transactions appear to be correct," enclosed all the documents

31

for her to review, and asked if she could pinpoint an error, please contact them. (Doc. 28-1-Nationstar's Resp. Ltrs.)[9]

On appeal, Mrs. Renfroe argues that Nationstar failed to conduct a reasonable investigation with respect to three specific alleged errors: (1) taxes, (2) amortization period, and (3) payment increase. (Renfroe's Br. 11.)

### 1. <u>Taxes</u>: The complete payment history will show if any property taxes were paid for Mrs. Renfroe, and, if so, how much.

Mrs. Renfroe alleges that she is unsure if her payment increase was caused by charging her for property taxes: "I am exempt from property taxes in my county and I believe that you were charging me escrow for tax payments which were never due. This may explain the $100.00 increase or it may not." (Doc. 24-Am. Compl. ¶ 11.)  Nationstar's response letter states that the complete payment history shows "[a]ny disbursements made from the loan, including, but not limited to, disbursement for <u>taxes</u> . . . ."  (Doc. 28-1, p. 2-Nationstar's Resp. Ltrs.) (emphasis added).

---

[9] *See* CFPB Commentary on § 1024.38(b), 78 Fed. Reg. 10893 (Feb. 14, 2013) ("The term 'procedures' refers to the actual practices followed by a servicer for achieving the objectives set forth in § 1024.38(b).").

If the payment history shows Mrs. Renfroe paid taxes, there could be an error.  If it shows that she incurred no cost for taxes, there is no error. Nationstar's letter said, "we did review the account, and all transactions appear to be correct from our records review" — no error.  (*Id*. at p. 3.)

In *Marais*, 24 F. Supp. 3d at 716, the borrower complained that she was charged late fees that were not due based on a "repayment plan." *See also id*. at 717 ("[O]nly February and November [payments] were late. But, notwithstanding, on the 16th or 17th of every month of 2008 Chase assessed Marais a late fee of $53.24."); (Renfroe's Br. 14-15.) Marias sent a qualified written request to her servicer, Chase, stating: "Late fees were charged despite a written repayment agreement from Chase to the contrary." *Id*. at 717.  She also stated that "payments made during the year 2008 and 2009 were misapplied to the account . . . ."  *Id*. Chase sent a cover letter that only listed, but did not describe several enclosures, including a loan transaction history. *Id*. at 717.   The district court found this inadequate because "where, as here, a borrower alleges that payments have been misapplied and her account has been incorrectly charged fees, it clarifies and explains nothing for the servicer to simply send the borrower new copies of documents she probably already has showing that the fees were indeed charged and the payments unallocated." *Id*. at 724.  The court continued:

33

For example, imagine that you are dining in a restaurant and *notice an apparent error on the bill*. You question the waiter about the error and he, without comment or dialogue, simply *returns with a new copy of the exact same bill*. Would you feel you had received "a written explanation or clarification" or that the waiter had "conduct[ed] an investigation" into the alleged error? What Chase has done here is no different.

*Id.* (emphases added.)  Further, Chase's response letter "d[id] not even assert that Chase indeed believe[d] Marais' account is correct." *Id.* at 724.

In short, Marais knew she had been charged late fees and had payments misapplied on her statements, but wanted an explanation as to whether the repayment plan meant these fees and misapplied payments should not have been listed on her statements. So giving her a copy of the statement showing the charges were indeed made to her account did not explain whether the repayment agreement meant the charges should not have been listed there.

The nature of Mrs. Renfroe's request about taxes is different. She does not assert that charges she knew were on her statements should not be there because of some external agreement. Instead, she does not seem to know if taxes are on her statements or not, but contends they should not be on her statement at all. *See* (Doc. 24-Am. Compl. ¶ 11) ("This [taxes] may explain the $100.00 increase or it may not."). A copy of the payment history will show whether any charge for taxes cost Mrs. Renfroe anything, or not.  This explains the answer to her question down to the last cent. And this response shows that Nationstar read Mrs. Renfroe's letter,

34

pulled her payment history, reviewed it to determine whether taxes cost her anything, or not, and (unlike the servicer in *Marais*) concluded that "all transactions appear to be correct from our records review." (Doc. 28-, p. 3-Nationstar's Resp. Ltrs.)[10] That's reasonable.[11]

It is true that in addition to the numeric payment history, Nationstar did not also include a narrative response to Mrs. Renfroe's question about taxes, as Nationstar did regarding the name of the owner of the prior loan servicer. (Doc. 28-1, p. 3-Nationstar's Resp. Ltrs.) Section 2605(e)(2)(B)(i) requires that a servicer "after conducting an investigation, provide the borrower with a written explanation or clarification that includes— (i) *to the extent applicable*, *a statement of the*

---

[10] And unlike the response letter in *Marais*, Nationstar's response letter included individualized answers to Mrs. Renfroe's specific questions concerning the owner of the loan at payoff, the date of payoff, escrow analysis, and search for prior servicer history. *See* (Doc. 28-1, pp. 1-3-Nationstar's Resp. Ltrs. Addendum 2.)

[11] *See* 12 U.S.C. § 2605(e)(2)(B); 12 C.F.R. § 1024.35(e)(1)(i)(B); *Bates v. JPMorgan Chase Bank, NA*, 768 F.3d 1126, 1135 (11th Cir. 2014) ("Although Bates was confused and/or unsatisfied with this answer, the information provided an explanation to Bates as to what happened to her September payment and provided her with contact information for further support."); *Whittaker v. Wells Fargo Bank, N.A.*, No. 6:12-cv-98-Orl-28GJK, 2014 U.S. Dist. LEXIS 151087, *28-*29 (M.D. Fla. Oct. 22, 2014) ("Although Plaintiff did not like the explanation he received from Wells Fargo, Wells Fargo did state why it believed that the action it had taken on Plaintiff's account with regard to application of the insurance proceeds was appropriate and correct. Such an explanation satisfies RESPA. The statute does not require the servicer to provide the resolution or explanation desired by the borrower; it requires the servicer to provide a statement of its reasons.").

*reasons* for which the servicer believes the account of the borrower is correct as determined by the servicer . . . ."  (Emphasis added.) In short, showing no net tax charges on a payment history is a reasonable written explanation that needs no further narration to understand.  And if a narrative answer was given (e.g., "No tax charges increased your payments"), a customer would clearly want to be shown the money entries on her payment history to confirm that. [12]

The specifics of the complete payment history and Nationstar's conclusion that "all transactions appear to be correct," trump the conclusory allegations of no reasonable investigation and no explanation.  *See* (Doc. 24-Am. Compl. ¶ 30) (Renfroe Br. 14, 19); *Griffin Indus.,* 496 F.3d at 1205-06.

Moreover, under *Twombly*, and *Iqbal*, Mrs. Renfroe's allegations — that she may have paid taxes, she is exempt from taxes, and Nationstar sent her the payment history showing whether any taxes were paid and stating that Nationstar reviewed her documents and "all transactions appear to be correct" (Doc. 24-Am.

---

[12] One might suppose that a credit card issuer could send a narrative essay of a cardholder's expenditures during the month instead of a mostly numeric statement. Because a cardholder is more interested in the exact amount of money he charged last month and the balance owed on his account, the relevant regulations require the mostly numeric statement. *See* 12 C.F.R. § 1026.8(a)(1) (2014) (requiring credit card issuers to "identify credit transactions on or with the first periodic statement that reflects the transaction by furnishing the following information, as applicable: . . .  for each credit transaction involving the sale of property or services, the creditor must disclose the amount and date of the transaction . . .").

Compl. ¶¶ 11, 20; Doc. 28-1, pp. 1-3-Nationstar's Resp. Ltrs.) — fail to state a plausible § 2605 or Regulation X claim.  The allegations are possibly consistent with Nationstar making no investigation and just stating that the account was correct (i.e., a violation). "[B]ut [the allegations are] just as much in line with" Nationstar conducting a reasonable investigation and concluding that taxes cost her no money (i.e., no violation and the more likely rationale). *Twombly*, 550 U.S. at 554, 127 S. Ct. at 1964.  Accordingly, dismissal was proper.

2.    __Amortization Period__: **The complete payment history's list of each payment and how it was applied (e.g., principal and interest) and running principal balance will show the term over which Mrs. Renfroe's loan was being amortized.**

Mrs. Renfroe alleges that "Nationstar may have been miscalculating the principal and interest payments and using an incorrect amortization schedule," and "I believe that you applied the wrong amortization formula [40-year v. 30-year term] when calculating my payments . . . ." (Doc. 24-Am. Compl. ¶¶ 10, 11.) Mrs. Renfroe states that her note shows the amount of her loan ($139,400), the interest rate (7.75%), the term (30 years), and that "[m]onthly principal and interest payments are $998.68." (*Id.* at ¶ 6.)

Nationstar's response letter's enclosure of Mrs. Renfroe's complete payment history either showed monthly principal and interest payments totaling $998.68, or

37

it did not. (Doc. 28-1, p. 2-Nationstar's Resp. Ltrs.) (stating the payment history that Nationstar provided showed "[h]ow the payments were applied to the loan" (e.g., principal, interest, taxes, insurance, fees) "with running balances of the unpaid principal and escrow accounts").[13] Nationstar's response letter states: "[W]e did review the account, and all transactions appear to be correct from our records review." (*Id.* at p. 3.) If the payment history showed that monthly principal + interest differed from $998.68, the amount of principal, interest rate, or term would be different because of a refinancing, loan modification, or possibly some other reason.  One of those reasons could possibly be erroneous.  But "possible" is not the standard, plausible is.  *See Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950.

Unlike the servicer in *Marais*, Nationstar responded to a question regarding whether principal and interest payments were calculated based on a 30-year term, which would be $998.68, with a payment history that expressly showed the amount of principal and interest for each payment. The numbers total to $998.68, or they do not. This response explained the answer to her question down to the last cent. And this response shows that Nationstar, a mortgage loan servicing company for

---

[13] Further, after receiving a copy of Mrs. Renfroe's note from her, (Doc. 24-Am. Compl. ¶ 11), Nationstar sent Mrs. Renfroe a copy of the note it had on file for her. (Doc. 28-1, p.1-Nationstar's Resp. Ltrs.) This enabled both Nationstar and Mrs. Renfroe to compare the term, interest rate, and payment amount on her note with the note that was in Nationstar's files to determine whether they both reflect the same terms.

which it can be inferred can calculate monthly loan payments, read her letter, pulled her payment history, reviewed her payment history for principal and interest payments, and (unlike the servicer in *Marais*) concluded that "all transactions appear to be correct." (Doc. 28-1, p.3-Nationstar's Resp. Ltrs.) That's reasonable.[14]

These specifics of the payment history that Nationstar's letter describes trump the conclusory allegations of no reasonable investigation and no explanation. *See* (Doc. 24-Am. Compl. ¶ 30) (Renfroe Br. 14, 19); *Griffin Indus.,* 496 F.3d at 1205-06.

Moreover, under *Twombly* and *Iqbal*, Mrs. Renfroe's allegations — that her monthly payment of principal and interest should total $998.68 and that Nationstar sent her the payment history showing every principal and interest payment and stating that Nationstar reviewed her documents and "all transactions appear to be correct" (Doc. 24-Am. Compl. ¶¶ 11, 20; Doc. 28-1, pp. 1-3-Nationstar's Resp. Ltrs.) — fail to state a plausible § 2605 or Regulation X claim. The allegations are possibly consistent with Nationstar making no investigation and just stating that the account was correct (i.e., a violation). "[B]ut [the allegations are] just as much in line with" Nationstar conducting a reasonable investigation and concluding amortization of principal and interest was correct (i.e., no violation and the more

---

[14] *See* 12 U.S.C. § 2605(e)(2)(B); 12 C.F.R. § 1024.35(e)(1)(i)(B); *Bates,* 768 F.3d at 1135; W*hittaker,* 2014 U.S. Dist. LEXIS 151087, *28-*29.

39

likely rationale).  *Twombly*, 550 U.S. at 554, 127 S. Ct. at 1964.  Accordingly, dismissal is proper.

**3.**     <u>**Payment Increase**</u>**: The complete payment history's list of all payments received and what they were applied to answers the questions whether there was an increase in the amount of the payments and, if so, why.**

Mrs. Renfroe sought "a detailed explanation as to why my payments increased" and "[a] detailed explanation of each payment increase and the reasons for the increase." (Doc. 24-Am. Compl. ¶ 11.) Nationstar's response letter included "a complete payment history for the period Nationstar has serviced the loan," "how the payments were applied," "any disbursements from the loan, including, but not limited to, disbursements for taxes, insurance, [etc.]" and a "description for each transaction."  (Doc. 28-1, pp.1-2-Nationstar's Resp. Ltrs.) For any increases that occurred during the time Nationstar serviced Mrs. Renfroe's loan, a list of each payment Nationstar received (i.e., transaction) would show if any of those payments were greater in amount than others.  If so, that would be an increase.  A complete history of each disbursement would show what the payment was composed of (e.g., principal, interest, taxes, insurance, fees) down to the penny. To the extent Mrs. Renfroe asked about an increase in her payment after Nationstar began servicing her loan, this answer to her question was reasonable.

To determine if any increase in payments occurred between the prior servicer's last collected payment and Nationstar's first collected payment, the prior servicer's payment history would be required for a comparison. Mrs. Renfroe asked for a complete payment history of the loan "from its inception" (Doc. 24-Am. Compl. ¶ 11.) Nationstar responded: "You asked us to provide prior servicer loan history. After conducting an investigation, Nationstar is unable to locate the information you requested. This information is unavailable." (Doc. 28-1, p. 3-Nationstar's Resp. Ltrs.) This answer and explanation complied with § 2605(e)(2)(C), which provides that a servicer may "after conducting an investigation, provide the borrower with a written explanation or clarification that includes— (i) information requested by the borrower or an explanation of why the information requested is *unavailable* or cannot be obtained by the servicer . . . ." (Emphasis added.)

This response shows that Nationstar read her letter, pulled her payment history, reviewed Nationstar's payment history for her any payment increase, searched for the prior servicer's complete payment history, sent Mrs. Renfroe a copy of her payment history with Nationstar, and explained it could not find the prior servicer's history, and concluded from the information it did have that "all

41

transactions appear to be correct." (Doc. 28-1, p.3-Nationstar's Resp. Ltrs.) That's reasonable.[15]

Mrs. Renfroe states "it is difficult to imagine that Nationstar would assume servicing an existing loan with no information as to the prior payment history." (Doc. 24-Am. Compl. ¶ 17.) But Congress specifically anticipated that some information might not be available to servicers and provided in § 2605(e)(2)(C)(i) that the servicer may explain that information is "unavailable."

And it can reasonably be inferred that the prior servicer did not transfer its payment history to Nationstar.  A comparison of the date that Mrs. Renfroe alleged Nationstar became the servicer of her loan, 2011, with the effective date of the Regulation X provision requiring a transfer of all servicing documents to a new servicer, 2014 (*id.* at ¶ 11), shows that the prior servicer was not required to transfer all documents to Nationstar. *See* 12 C.F.R. § 1024.38(b)(4) (effective Jan. 10, 2014).

Further, even after the effective date, the Bureau specifically rejected a comment suggesting that Regulation X require the transferor servicer to provide a complete payment history upon the transfer of servicing responsibilities. *See* 78 Fed. Reg. 10730 (Feb. 14, 2013) ("[T]he Bureau does not believe that the cost of

---

[15] *See* 12 U.S.C. § 2605(e)(2)(B) & (C); 12 C.F.R. § 1024.35(e)(1)(i); *Bates*, 768 F.3d at 1135; W*hittaker*, 2014 U.S. Dist. LEXIS 151087, *28-*29.

providing the default status of the loan or a *full payment history* with the servicing transfer notice for all borrowers would be justified.") (Emphasis added.) And the comments to the 2013 Regulation X amendments show that before 2014, servicers' files were not always models of comprehensiveness. *See id.* at 10787 ("Consumer advocates highlighted their support for the requirement that servicers maintain a servicing file that includes a copy of the security instrument and the complete payment history. . . . Industry comments also noted that some servicers' existing files do not contain all of the required elements.").

In *Hittle v. Residential Funding Corp.*, No. 2:13-cv-353, 2014 U.S. Dist. LEXIS 107423 (S.D. Ohio Aug. 5, 2014), the same judge who authored the opinion in *Marais*, 24 F. Supp. 3d at 724, granted a summary judgment for a servicer on a § 2605(e)(2) claim where the borrower broadly alleged "[o]ur clients dispute all late fees, charges, inspection fees, property appraisal fees, forced placed insurance charges, legal fees, and corporate advances charged to this account. Furthermore, our clients believe their account is in error for the following reasons: the balance due is erroneous due to excessive fees and interest." *Id.* at *26. "The Hittles may as well have said that they dispute everything because everything is excessive. Section 2605(e)(2)(B) imposes a duty on Ocwen to investigate alleged errors — not invent or imagine errors on behalf of a complaining mortgagor and investigate those." *Id.* at *31-*32. The district court also stated that although not

43

applicable to the borrower's inquiry in that case, 12 C.F.R. § 1024.35(g) confirmed that a borrower need not respond to an overbroad notice of error.

Similarly, to the extent that Mrs. Renfroe's inquiry about an increased payment and request for information about any and all increases, *see* (Doc. 24-Am. Compl. ¶ 11), was not caused by taxes, which is answered above, it is overbroad. *See* 12 C.F.R. § 1024.35(g)(1)(ii) (effective Jan. 10, 2014) ("A servicer is not required to comply with the requirement of this section if . . . [t]he notice of error is overbroad. A notice of error is overbroad if the servicer cannot reasonably determine from the notice of error the specific error that the borrower asserts has occurred on a borrower's account.").

The specifics of the payment history showing each payment received, and thus whether there was any increase, and the search for the prior servicer's payment history and report that it was unavailable trump the conclusory allegations of no reasonable investigation and no explanation. *See* (Doc. 24-Am. Compl. ¶ 30) (Renfroe Br. 14, 19); *Griffin Indus.*, 496 F.3d at 1205-06.

Moreover, under *Twombly* and *Iqbal*, Mrs. Renfroe's allegations — that her payments increased, but she does not know if taxes or some other unidentified charge caused the increase, and that Nationstar sent its payment history showing whether any payments increased, stated the prior servicer's payment history was unavailable, and stated that Nationstar reviewed her documents and "all

44

transactions appear to be correct" (Doc. 24-Am. Compl. ¶¶ 11, 20; Doc. 28-1, pp. 1-3-Nationstar's Resp. Ltrs.) — fail to state a plausible § 2605 or Regulation X claim.    The allegations are possibly consistent with Nationstar making no investigation and just stating that the account was correct and it could not find the prior servicer's payment history (i.e., a violation).    "[B]ut [the allegations are] just as much in line with" Nationstar conducting a reasonable investigation and concluding that her payments did not increase (or did not increase incorrectly), and that the prior servicer's payment history was actually unavailable (i.e., no violation and the more likely rationale).    *Twombly*, 550 U.S. at 554, 127 S. Ct. at 1964. Accordingly, dismissal was proper.

## II.    Mrs. Renfroe Failed To Allege Damages Caused By Any Alleged RESPA Violation.

In addition to not alleging a plausible violation of the element of duty under RESPA, Mrs. Renfroe also fails to allege the element of damages caused by a RESPA violation.    Section 2605(f) provides, however, that for a failure to comply with a RESPA provision, an individual may recover only "actual damages to the borrower *as a result of the failure*." (Emphasis added.) *See Madura v. BAC Home Loans Servicing, LP*, 593 F. App'x 834, 842 (11th Cir. 2014) ("If a loan servicer fails to comply with any of these provisions [§ 2605(e)(2)], an individual borrower

may recover any actual damages *caused by* the failure.") (Emphasis added) *Buckentin v. SunTrust Mortg. Corp.*, 928 F. Supp. 2d 1273, 1293-94 (N.D. Ala. 2013) (dismissing RESPA claim for failure to allege actual damages attributable to the RESPA violation).[16] Mrs. Renfroe argues that she properly alleged damages for the cost of sending her inquiry letter (e.g., postage), lack of a refund of incorrectly increased payments, and additional, pattern and practice damages. (Renfroe's Br. 19-30.) All of Mrs. Renfroe's alleged losses were incurred before Nationstar sent its response letter in June 2014. (Doc. 24-Am. Compl. ¶ 9.)

### A. The Cost of Sending a Qualified Written Request Letter Does Not Constitute Damages Caused by a RESPA Violation Because Such Costs Would Be Incurred With or Without a Violation.

Mrs. Renfroe argues that she properly alleged as actual damages the expenses incurred "in sending the qualified written request, which because of Nationstar's inaction, has been for naught." (Doc. 24-Am. Compl. ¶ 20); (Renfroe's Br. 23-27.) This argument fails because the cost of sending the inquiry letter would have been incurred regardless of whether Nationstar's subsequent

---

[16] *See also Stevens v. CitiGroup, Inc.*, No. 00-3815, 2000 U.S. Dist. LEXIS 18201, *11 (E.D. Penn. Dec. 15, 2000) ("A plaintiff cannot proceed on [a] RESPA claim without alleging some actual damage attributable to [a] defendant's violation of the statute."); *Dietz v. Ben. Loan and Thrift Co.*, No. 10-3752, 2011 U.S. Dist. LEXIS 62285, *13 (D. Minn. June 10, 2011) (dismissing RESPA claim where "the Second Amended Complaint fails to state facts that would show that any damage to Plaintiffs was attributable to Defendants' lack of response").

46

response complied with or violated the statute. In short, such a circular argument would eliminate the damage requirement because some expense would always occur in sending a qualified written response.

*Freeport Sulphur Co. v. The S/S Hermosa*, 526 F.2d 300, 304 (5th Cir. 1976) ("The purpose of compensatory damages in tort cases is to place the injured person as nearly as possibly in the condition he would have occupied if the wrong had not occurred."); *see* Dan B. Dobbs, *Remedies* 786 (1973) ("The traditional goal in awarding damages for breach of contract is to award a sum that will put the non-breaching party in as good a position as he would have been in had the contract been performed.").

To mail her qualified written response, Mrs. Renfroe incurred some cost, for example, a 49-cent postage stamp. Even if Nationstar had not subsequently and allegedly violated any duty under § 2605(e)(2), Mrs. Renfroe would have still been in the same economic position — out the 49 cents. She cannot say that except for Nationstar's subsequent alleged violation of RESPA by an allegedly unsatisfactory response, she would not have spent the 49 cents.[17]

---

[17] *See Jackson v. Sauls*, 206 F.3d 1156, 1168 (11th Cir. 2000) ("For damages to be proximately caused by a constitutional tort, a plaintiff must show that, except for that constitutional tort, such injuries and damages would not have occurred . . . .").

47

If this Court's cases treating damages as a necessary element of a RESPA claim are correct, it would make little sense to hold that such an element is always satisfied because the borrower will always incur some cost in sending a qualified written response.  *See, e.g.*, *Madura*, 593 F. App'x at 843 (affirming summary judgment in part because plaintiffs failed to present evidence of damages caused by § 2605 violation).[18]

Only after that duty to respond is triggered, can the servicer comply with or breach that duty. After Nationstar responded on June 26, 2014, Mrs. Renfroe does not allege that she incurred further postage expenses. *See Steele v. Quantum Servicing Corp.*, No. 3:12-CV-2897-L, 2013 WL 3196544, at *8 (N.D. Tex. June 25, 2013) ("[T]he costs allegedly incurred by Plaintiffs in preparing and sending the March 30, 2012 letter to Quantum are not actionable under RESPA because any such costs would have necessarily been incurred *before* the alleged RESPA violation, that is, before Defendants were allegedly required to acknowledge or respond to the March 30, 2012 letter."); *see generally Whittaker v. Wells Fargo*

---

[18] *See also Soriano v. Countrywide Home Loans, Inc.*, No. 09-cv-02415-LHK, 2011 U.S. Dist. LEXIS 59714, *12, (N.D. Cal. June 2, 2011) (rejecting argument that damages included cost of sending QWR because "automatically counting the cost of sending a QWR (or any follow-up correspondence) as RESPA damages would, as the court held in *Lal* [*v. Am. Home Servicing, Inc.,* 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010)], create a 'built-in claim for damages' in every RESPA claim").

48

*Bank, N.A.*, 2014 U.S. Dist. LEXIS 151087, at *33 (M.D. Fla. Oct. 22, 2014)

("Legal fees for preparing the QWR itself are not recoverable as actual damages

because they are necessarily incurred before the alleged RESPA violation

occurred.").

Mrs. Renfroe cites some non-binding cases[19] (Renfroe's Br. 24-25) for the

proposition that the cost of sending a qualified written response constitutes

---

[19] First, in *Russell v. Nationstar Mortgage, LLC*, No. 14-61977, 2015 WL 541893, *2 (S.D. Fla. Feb. 10, 2015), the court distinguished *Steele*, 2013 WL 3196544, because Russell's alleged actual damages of photocopying costs and postage costs were alleged to have been incurred *after* Nationstar's response to the QWR. Mrs. Renfroe has claimed no such post-QWR costs. Second, *Justice v. Ocwen Loan Servicing*, No. 2:13-cv-165, 2015 WL 235738 (S.D. Ohio Jan. 16, 2015), and *McMillen v. Resurgent Capital Servs., L.P.*, No. 2:13-cv-00738, 2014 WL 3341337 (S.D. Ohio July 8, 2014 ) are decisions out of the Southern District of Ohio that simply follow that court's dubious "metamorphosis" theory from *Marais*, 24 F. Supp. 3d at 727-29, which, the district court agreed with Nationstar, would render RESPA's actual damages requirement meaningless. (Doc. 31, at 7; doc. 32, at 19-20; doc. 34, at 12-13; doc. 35, at 1.) Third, the court in *In re Tomasevic*, 273 B.R. 682 (Bankr. M.D. Fla. 2002) *rejected* the borrower's claim that the alleged cost of borrowing monies to pay photocopies and postage costs satisfied RESPA's actual damages requirement; moreover, the debtor in that bankruptcy case "made no claim for photocopies or postage in sending a written qualified request but instead has claimed those costs only in connection with court proceedings," so the costs of preparing and sending a QWR were not even at issue *Id.* at 688 n.4. Finally, Mrs. Renfroe cites *Johnstone v. Bank of America, N.A.*, 173 F. Supp. 2d 809 (N.D. Ill. 2001), and *Cortez v. Keystone Bank, Inc.*, No. 98-2457, 2000 WL 536666 (E.D. Pa. May 2, 2000), which both rely on *Rawlings* [*v. Dovenmuehle Mort., Inc.*, 64 F. Supp. 2d 1156,] 1164. *Johnstone* found that actual damages could be satisfied by alleging damages not on costs of postage, but for "time spent and inconvenience." 173 F. Supp. 2d at 816. Similarly, *Cortez* found actual damages satisfied not on costs of postage, but on a purported "denial of access to the full amount of the credit line result[ing] from an improper failure to correct the

49

damages when there is a subsequent breach. She quotes a hypothetical posed by the district court *Marais* that money paid to a painter is not damages if the painter paints the house, but is damages if the painter takes the money and does not paint the house. (Renfroe's Br. 26) (quoting *Marais*, 24 F. Supp. 3d at 727-29). Of course, in that scenario, the homeowner and the painter enter a bilateral contract to exchange paint for an equal value of services. And the homeowner is not required to pay the value of the paint job regardless of whether the painter paints the house.

By contrast, under § 2605, the cost of postage for a qualified written request bears no relation to the value of an error that needs correcting, an entry that is not erroneous that needs explaining, or information that should be provided. And

---

assessment of interest charges." 2000 WL 536666, *12. Each of these cases rely on *Rawlings*, where the court did not even directly address whether the cost of sending a QWR satisfies the damages pleading requirement of RESPA, because the defendant in that case apparently stipulated that photocopy, secretarial, and travel expenses flowed from a RESPA violation. *Rawlings*, 64 F. Supp. 2d at 1164. *See Tsakanikas v. JP Morgan Chase Bank N.A.,* No. 2:11-cv-888, 2012 U.S. Dist. LEXIS 172058, *9-*10 (S.D. Ohio Dec. 4, 2012) (distinguishing *Rawlings* because *Rawlings* "did not directly address whether the cost of sending a QWR satisfies the damages pleading requirement of RESPA"); *Steele*, 2013 WL 3196544, at *8 (distinguishing and disregarding *Johnstone*, *Cortez*, and *Rawlings*, because "the costs allegedly incurred by Plaintiffs in preparing and sending the March 30, 2012 letter to Quantum are not actionable under RESPA because any such costs would have necessarily been incurred *before* the alleged RESPA violation, that is, before Defendants were allegedly required to acknowledge or respond to the March 30, 2012 letter. . . . Moreover, Plaintiffs would have incurred the costs *regardless* of whether Defendants acknowledged and responded to the March 30, 2012 letter.").

§ 2605 requires the borrower to send the qualified written request to trigger the servicer's statutory duty to respond whether the servicer responds satisfactorily or not. Had a servicer provided a perfect response, the borrower would not have suffered a bad credit rating, an incorrect payment, or something else caused by the inadequate response from the servicer. The damages caused by the failure to adequately respond is not the 49 cents, but the value of the harm from the subsequent inadequate response.

Under first principles of damages, to place Mrs. Renfroe in the same position she would have occupied had there been no wrong, and the better reasoned cases, Mrs. Renfroe has not alleged damages for the cost of sending her qualified written response.

**B.    The Failure to Refund Overpayments Caused by Allegedly Incorrect Collections Does Not Constitute Damages Because § 2605(e)(2)(B) Allows a Servicer to Explain an Account is Correct and Any Excess Collections Can be Obtained by a Breach of Contract Claim.**

Mrs. Renfroe argues that her "damages" are Nationstar's "fail[ure] to issue a refund" after receiving that letter.  (Doc. 24-Am. Compl. ¶¶18-20).  This fails for two reasons.  First, as discussed earlier in this Brief, Nationstar is *not* required to give a "refund" under RESPA when it believes the borrower's account is correct. *See* 12 U.S.C. § 2605(e)(2)(B); 12 C.F.R. § 1024.35(e)(1).  That is what

51

Nationstar's response letter says. (Doc. 28-1, p. 3-Nationstar's Resp. Ltrs.) ("[W]e did review the account, and all transactions appear to be correct."). *See Bates*, 768 F.3d at 1135 ("Although [plaintiff] was confused and/or unsatisfied with [servicer's] answer, . . . *the breakdown in communication between* [*plaintiff and the servicer*] *. . . did not cause* [*plaintiff*] *damages.*") (emphases added); 78 Fed. Reg. 10746 (Feb. 14, 2013) (rejecting consumer comment requesting revision of proposed rule to address "*inaccurate determinations that no error occurred*" because "[t]he Bureau believes that, as proposed, *the rule adequately addresses such scenarios by requiring disclosures about borrowers' rights to request the information* on which the servicer relied, so as to facilitate the borrower's opportunity to review and consider further action as appropriate").

Second, Mrs. Renfroe's alleged increased payments occurred by the September 2013 refinancing payoff of her loan and before Nationstar's June 26, 2014 response letter. If Mrs. Renfroe paid any excess money, she paid it before she triggered Nationstar's duties under § 2605(e)(2). That loss can be recovered by a claim for breach of contract for a substantive loss, not a RESPA claim for allegedly faulty reporting. *See Selman v. CitiMortgage, Inc.*, No. 12-0441-WS-B, 2013 U.S. Dist. LEXIS 37017, *30-*32 (S.D. Ala. Mar. 5, 2013) (Steele, C.J.) (noting "several of [*the allegations of damages*] *predate the QWR*" and stating "the borrower's actual damages must flow directly from the servicer's lack of timely

52

response in order to be cognizable. See *Lal v. American Home Servicing, Inc.*, 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010) ("[A]*llegations made under a separate cause of action are insufficient* to sustain a RESPA claim for actual damages as they are not a direct result of the failure to comply") (Emphasis added.)[20]

In *Marais v. Chase Home Finance, LLC*, 736 F.3d 711, 721 (6th Cir. 2013), the Sixth Circuit found that the "complaint sufficiently stated that interest damages flowed from [the servicer's] deficient response to her QWR because any *additional interest she paid on the principal balance <u>after</u>* [the servicer] deficiently responded to her QWR . . .would flow from the deficient response." (Emphases added.) This case is distinguishable from *Marais* in that Nationstar ceased servicing Mrs. Renfroe's mortgage nearly a year before her June 17, 2014 letter, and she made no additional payments following Nationstar's allegedly deficient response to her June 17, 2014 letter.

This case is more like *Selman*, wherein the court dismissed a RESPA claim because the complaint did "not connect any of [the complaint's] broad allegations

---

[20] *See also Dietz*, 2011 U.S. Dist. LEXIS 62285, *3 (dismissing RESPA claim where "the Second Amended Complaint fails to state facts that would show that any damage to Plaintiffs was attributable to Defendants' lack of response"); *Claxton v. Orlans Associates, P.C.*, No. 10-10813, 2010 U.S. Dist. LEXIS 88028, *12-*13 (E.D. Mich. Aug. 26, 2010) (dismissing § 2605 claim where complaint did not allege "that Plaintiffs incurred any actual damages as a result of Bank of America's alleged failure to timely or adequately respond to their QWR").

(*several of which predate the QWRs*) to the alleged § 2605 violation, or in any way identify or suggest a direct relationship between the two." *Selman*, 2013 U.S. Dist. LEXIS 37017, at *30-*31 (emphasis added).

### C.    There are No "Additional" Pattern and Practice Damages Because there are No Baselne Actual Damages and Because Four of the Five Alleged Pattern and Practice Letters Have No Description of the Requests or Responses.

Section 2605 allows recovery of statutory damages for "any *additional* damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000." 12 U.S.C. § 2605(f)(1)(B) (emphasis added). Because Mrs. Renfroe has failed to allege any actual damages sufficient to obtain relief pursuant to § 2605(f)(1)(A), she is not entitled to "additional" pattern or practice damages under § 2605(f)(1)(B). *See Selman*, 2013 U.S. Dist. LEXIS 37017, at *31 n.10 ("The Court recognizes the existence of authority bolstering [the] contention that proof of actual damages is mandatory to recover on a § 2605(e) violation, and that a § 2605(e) claim cannot stand on statutory damages alone . . . This issue need not be decided here, however, because the Second Amended Complaint does not state an adequate factual predicate to support even a claim for statutory damages.") (citations omitted).

54

Mrs. Renfroe alleges five occasions on which Nationstar sent "the same generic form letters to respond to qualified written requests and notices of servicing errors." (Doc. 24-Am. Compl. ¶ 16.) She alleges that the form letters were sent to "borrowers in Birmingham, Alabama; Mobile, Alabama and Lexington, Maryland." (*Id.*) For four of the letters, she did not disclose the identity of the recipients, the date of the letters, or whether their requests were similar to hers. *See Paschette v. Wells Fargo Bank, N.A.*, No. 6:11-cv-442, 2011 U.S. Dist. LEXIS 101677, *5 (M.D. Fla. Sept. 8, 2011) (rejecting "pattern or practice" claim where plaintiff alleged that servicer failed to respond to QWRs from "at least three residents of Brevard County," holding that such allegations "fail[ed] to identify any wrongfully withheld information" and were "too conclusory to state a claim based on a pattern or practice of RESPA noncompliance"); *McLean v. GMAC Mortg. Corp.,* 595 F. Supp. 2d 1360, 1365 (S.D. Fla. 2009) (holding that violation of RESPA on two occasions is "insufficient to support a pattern or practice of noncompliance"); *Kapsis v. Am. Home Mortg. Servicing, Inc.*, 923 F. Supp. 2d 430, 445 (E.D. N.Y. 2013) (noting "there is no magic number of violations that create a 'pattern or practice of noncompliance'").

Mrs. Renfroe submitted one of the letters, the one to Mr. Aaron James. (Doc. 28-1, pp. 4-6, Nationstar's Resp. Ltrs.) The redline comparison of Nationstar's letters to Mrs. Renfroe and Mr. James shows that the letters do use

some common language.  But the letters also included different documents (e.g.,
notice of servicing transfer and most recent escrow statement for Mrs. Renfroe
only) and different answers (e.g., Mrs. Renfroe's note had been paid off, Mr.
James's note had not been paid off, Mrs. Renfroe was told her prior servicer's loan
history was unavailable and that her account was correct, while Mr. James was not,
Mrs. Renfroe and Mr. James were given different persons to contact).  (*See*
Addendum 3.)  Because Mr. James's inquiry letter is not in the record, it cannot be
said whether Nationstar's letter to him was sufficient under § 2605(e)(2).

Mrs. Renfroe repeatedly accuses Nationstar of having a "pattern and
practice" of using "boilerplate statements and objections" "as a matter of course"
when responding to QWRs.  (Doc. 24-Am. Compl. ¶¶ 12-18.)  However, "[a]
conclusory statement of a pattern or practice is just the kind of legal conclusion
that fails to pass muster under *Twombly / Iqbal* principles." *Selman*, 2013 U.S.
Dist. LEXIS 37017, *33 ("Merely mouthing the buzzwords 'pattern and practice'
in a complaint does not satisfy minimum pleading requirements because it
represents a legal conclusion, and such conclusory labels are not credited for Rule
12(b)(6) purposes."); *Davis v. Greenpoint Mortg. Funding, Inc.*, No. 1:09-cv-2719-
CC-LTW, 2011 U.S. Dist. LEXIS 151993, *16-*17 (N.D. Ga. Sept. 19, 2011)
(conclusory allegations that defendant "has made it a practice" not to comply with
QWRs, coupled with a single failure to respond, "are conclusory and are

insufficient to permit the 'pattern or practice' claim for statutory damages to survive the motion to dismiss").

Mrs. Renfroe fails to state a claim under RESPA.[21]

## CONCLUSION

When a borrower asks about everything, the loan servicer's providing everything in detail is reasonable.  When a borrower does not pay any money after sending her letter to the servicer, she has no damages caused by the servicer's response to her letter.  This Court should affirm.

---

[21] Mrs. Renfroe's argument that Nationstar contends that it is not required to issue a refund to her because her loan is closed (Renfroe Br. 28-29) is inaccurate. Nationstar explained that Mrs. Renfroe's "failure to refund" theory, which would create a new claim duplicative of a breach of contract claim, would improperly circumvent valid legal doctrines such as statutes of limitations, waiver, or voluntary payment.  (Doc. 26-Nationstar's Br. in Supp. of Mot. to Dismiss, at 10-11).

/s/  *Ed R. Haden*

One of the Attorneys for Defendant-Appellee Nationstar Mortgage, LLC

**Of Counsel:**

Gregory C. Cook
Email: gcook@balch.com
Ed R. Haden
Email: ehaden@balch.com
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, AL 35201-0306
Telephone: (205) 226-8795
Facsimile:   (205) 488-5648

G. Lane Knight
Email: lknight@balch.com
John Wesley Naramore
Email: jnaramore@balch.com
BALCH & BINGHAM LLP
Post Office Box 78
Montgomery, AL  36101-0078
Telephone: (334) 834-6500
Facsimile:  (334) 269-3115

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 32(a)(7)(c), Defendant-Appellee Nationstar

Mortgage, LLC hereby certifies that this brief, in Times New Roman 14-point type

face, contains 13,943 words and therefore does not exceed the word limitation of

Fed. R. App. P. 32(a)(7)(B)(i).


/s/ *Ed R. Haden*
One of the Attorneys for Defendant-Appellee Nationstar Mortgage LLC


**<u>Of Counsel</u>:**

Gregory C. Cook
Email: gcook@balch.com
Ed R. Haden
Email: ehaden@balch.com
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, AL 35201-0306
Telephone: (205) 226-8795
Facsimile:  (205) 488-5648

G. Lane Knight
Email: lknight@balch.com
John Wesley Naramore
Email: jnaramore@balch.com
BALCH & BINGHAM LLP
Post Office Box 78
Montgomery, AL  36101-0078
Telephone: (334) 834-6500
Facsimile:  (334) 269-3115

## **CERTIFICATE OF SERVICE**

I hereby certify that I served the foregoing on the following counsel by electronic means as provided in Rule 25(c)(1)(D), Fed. R. App. P., on this the 11th day of May, 2015:

Kenneth J. Riemer
Underwood & Riemer, PC
166 Government Street, Suite 100
Mobile, AL  36602
Telephone: (251) 432-9212
Email: kjr@alaconsumerlaw.com

Earl P. Underwood, Jr.
Underwood & Riemer, PC
21 South Section Street
Fairhope, AL  36580
Telephone: (251) 990-5558
Email: epunderwood@alalaw.com

Respectfully submitted,

 /s/ *Ed R. Haden*
Of Counsel

*Renfroe v. Nationstar Mortgage, LLC*
**No.: 15-10582**

# Addendum 1
## Margaret Renfroe Letter

10.     Around the time she refinanced the mortgage, Mrs. Renfroe was informed by someone helping her with the loan that Nationstar may have been miscalculating the principal and interest payments and using an incorrect amortization schedule.

11.     On June 17, 2014, Mrs. Renfroe sent Nationstar a letter seeking an explanation of why her payments increased and explaining her belief that the payments were not calculated properly.   Here is the text of that letter:

> I am writing because I have reason to believe that servicing errors have been committed in the servicing of the above-referenced mortgage loan.
> First, when you assumed the servicing of my loan, which I believe was sometime in 2011, you increased my monthly payments by $100.00.  I've contacted your company several times in an attempt to get some explanation as to why my payments increased but was never provided one.  As I have repeatedly explained to your representatives, I am exempt from property taxes in my county and I believe that you were charging me escrow for tax payments which were never due.  This may explain the $100.00 increase or it may not.  In any event, I am writing to request that you investigate this matter and provide me a detailed explanation as to why my payments increased.  I'm also requesting additional information as set forth below.
>
> Furthermore, it came to my attention when this loan was refinanced in September 2013 that the payments you were collecting from me were calculated based on an amortization schedule for a 40-year term loan. I'm attaching a copy of my original Truth and Lending Statement and note, both of which reflect a 30-years mortgage. I believe that you applied the wrong amortization formula when calculating my payments and this caused me to pay more interest than I had originally bargained for. I believe that this resulted in a larger payoff that I had to pay when I refinanced the loan last September than what would otherwise have been the case. I'm requesting that you also investigate this aspect of my loan and refund me any interest or fees which were wrongfully collected.
>
> In addition to your investigation and correction of the errors identified above, please provide the following information:
>
> •       Complete payment history of the loan showing how each payment was applied and identifying all fees and other charges collected in connection with my loan from its inception until it was paid off in September 2013;
>
> •       A complete history of all disbursements made by you from my escrow account and all monies collected by you for escrow;
> •       A detailed explanation of each payment increase and the reasons for the increase;
>
> •       A list of each and every payment for taxes you made from the my escrow account, giving the date and amount of each payment.  Also identify each and every refund you received in connection to a tax payment.

3

- State whether you believe that there has been a lapse of homeowner's insurance, state the dates of each alleged lapse and state the date you claim you notified me of the lapse, if any;

- Description of how my payments were calculated from the beginning of the loan to when it was paid, including explanation of how the payments were amortized;

- Detailed explanation of how the pay-off amount you provided in connection with the refinance of the loan was calculated and an itemized breakdown of that figure;

- State whether you have ever calculated my payments based on a maturity date other than June 1, 2036. If so, state when such calculation started and how many payments you collected from me based on that calculation.

- State the date you first became the servicer of the loan; and

- Identify the owner of the loan at the time it was paid in full.

Please send the requested information and documents to me at the above address. I look forward to receiving your response.

Sincerely,

Margaret Renfroe

12.     On June 26, 2014, Nationstar responded to Mrs. Renfroe's QWR, but failed to provide any explanation of payment calculation or amortization; and failed to specifically answer Mrs. Renfroe's questions. Nationstar also failed to provide the specifically requested information. Instead, Nationstar provided boilerplate statements and objections which do not apply to Mrs. Renfroe's letter, provided information and documents not requested and without explanation, stated the general conclusion that it did nothing wrong in servicing the account.

13.     Nationstar's letter predominately consists of boilerplate language and which has no relevance to Mrs. Renfroe's specific dispute. Nationstar stated that the information requested "does not pertain directly to the servicing of the loan, does not identify any specific servicing errors, and/or is considered proprietary and confidential. Therefore, this information is considered outside of the

4

*Renfroe v. Nationstar Mortgage, LLC*
**No.: 15-10582**

# Addendum 2
**Nationstar's Letters**

**Nationstar**
M O R T G A G E

June 26, 2014

Margaret C. Renfroe
109 Glenwood St
Mobile, AL 36606

RE:     Nationstar Reference Number – NSM-06-14-62960
        Mortgagor – Margaret Renfroe
        Property Address – 109 Glendwood St, Mobile, AL 36606
        Loan Number – _____

Dear Margaret C. Renfroe:

Nationstar Mortgage LLC (Nationstar) is in receipt of your correspondence on June 23, 2014, regarding the above referenced property. We appreciate the effort on your part to bring this to our attention as we take all such matters seriously.

Some information you have requested does not pertain directly to the servicing of the loan, does not identify any specific servicing errors, and/or is considered proprietary and confidential. Therefore, this information is considered outside the scope of information that must be provided. However, the information below and enclosed documents should address any of your relevant questions and requests. Enclosed, you will find the following documents:

- Note and Security Instrument

    o The Note and Security Instrument will validate the above-mentioned loan. These documents will explain our rights to:

        ▪ Collect any remaining debt owed under the Note and Security Instrument

        ▪ Assess fees and costs to the loan as necessary, including late fees if a payment is received after the specified grace period and legal fees if a loan is in default

        ▪ Inspect the property and charge applicable fees

        ▪ Purchase lender placed insurance

        ▪ Pay taxes on the mortgagor's behalf

- Payment History

    o The Payment History reflects a complete history for the period Nationstar has serviced the loan. Late fees are assessed any time the contractual payment is received after the grace period, as stipulated in the Note. Please note, late fees are not considered interest and are not reported to the IRS on IRS Form 1098. If a payment was applied to the suspense account, it will be indicated in the code description column. Payments can be applied to the suspense account if the funds received do not represent the full monthly mortgage payment due, or if Nationstar is not informed of where the payment is to be applied. Furthermore, this Payment History reflects:

        ▪ When payments were received

This is an attempt to collect a debt and any information obtained will be used for that purpose. If this debt is in or has been discharged in a bankruptcy proceeding, be advised this communication is not an attempt to collect the debt against you. Please note, however, we reserve the right to exercise the legal rights only against the property securing the original obligation.



**Nationstar™**
MORTGAGE

- How the payments were applied to the loan

- Any disbursements made from the loan, including, but not limited to, disbursements for taxes, insurance, property inspections, broker's price opinions (BPOs), and legal fees

- A description for each transaction, with running balances of the unpaid principal and escrow accounts

- The date fees and charges were assessed, if any

- Any amounts paid towards fees

- Any waivers/reversals of fees

- Most Recent Billing Statement

  o The Billing Statement will reflect the last amount due on the loan prior to payoff, and will also provide a breakdown of any fees assessed, including any lender paid expenses or corporate advance fees.

- Notice of Servicing Transfer, also known as Welcome Letter

  o The Servicing Transfer Notice will detail the date and terms of the service transfer from the prior servicer to Nationstar. This document evidences Nationstar's right to service the loan.

- Most Recent Escrow Analysis Statement

  o The Escrow Analysis will provide a detailed description of all disbursements made from the escrow account, as well as any payments towards the escrow account for the prior year. It will also provide a breakdown of how the current escrow payment has been calculated, including any shortages that may exist.

- Payoff Quote

  o The Payoff Quote will include the full amount necessary to pay the loan in full. You may have received a copy of the Payoff Quote under a separate cover. This document is sent for informational purposes only, is in no way a demand to pay the loan in full, and will not result in any additional fees being assessed to the loan.

Furthermore, our records indicate American General S05 was the owner of the Note prior to payoff. As requested, we have provided the address and phone number below:

American General Mortgage
604 NW Second St
Evansville, IN 47711
800.757.1983

Please note that Nationstar is the servicer of the loan, and therefore, will be responsible for responding to any concerns regarding the servicing of the loan. Servicing matters include, but are not limited to, payment assistance and modifications, payment posting, validation of the debt, foreclosure proceedings, and payment adjustments. As such, please direct any correspondence related to these matters to Nationstar.

Additionally, the owner of the mortgage Note is the noteholder of the loan Note. However, there are some circumstances where the owner has given temporary possession of the loan note to the servicer. The owner does this

This is an attempt to collect a debt and any information obtained will be used for that purpose. If this debt is in or has been discharged in a bankruptcy proceeding, be advised this communication is not an attempt to collect the debt against you. Please note, however, we reserve the right to exercise the legal rights only against the property securing the original obligation.



in order to ensure that the servicer is able to perform the services and duties incident to the servicing of the mortgage loan, such as foreclosure actions, bankruptcy cases, and other legal proceedings.

Upon receipt of this correspondence, the above-mentioned loan and related documents were reviewed and found to comply with all state and federal guidelines that regulate them. As such, the above-mentioned loan account will continue to be serviced appropriate to its status.

You asked us to provide the prior servicer loan history. After conducting an investigation, Nationstar is unable to locate the information you requested. This information is unavailable. However, we did review the account, and all transactions appear to be correct from our records review. If you think there is an error in the servicing of the account, please let us know so that we can investigate and resolve any potential servicing error.

Furthermore, the Payment History appears to be reported accurately to the main credit repositories. If you have documentation that substantiates that any of the information reported by Nationstar on the credit report is incorrect, please provide the detailed information for review.

At Nationstar, customer concerns are important to us. Should you have any questions, please contact me directly; or, if you have general questions regarding the account, please contact:

Customer Service Department
Monday through Thursday, 8 a.m. to 8 p.m. Central Time
Friday, 8 a.m. to 6 p.m. Central Time
Saturday, 8 a.m. to 2 p.m. Central Time
Toll-free Number: 888.480.2432

Sincerely,

De'Marco Jefferson
Customer Relations Specialist
Nationstar Mortgage LLC
350 Highland Drive
Lewisville, TX 75067
phone: 480.467.0523
e-mail: De'Marco.Jefferson@Nationstarmail.com

Enclosures 8
By United States Postal Service

This is an attempt to collect a debt and any information obtained will be used for that purpose. If this debt is in or has been discharged in a bankruptcy proceeding, be advised this communication is not an attempt to collect the debt against you. Please note, however, we reserve the right to exercise the legal rights only against the property securing the original obligation.



February 3, 2014

Aaron James
P.O. Box 479
Theodore, AL 36590

RE:     Nationstar Reference Number – NSM-01-14-35586
        Mortgagor – Aaron James
        Property Address – 7363 Elmo Avenue, Theodore, AL 36590
        Loan Number – |

Dear Aaron James:

Nationstar Mortgage LLC (Nationstar) is in receipt of your correspondence dated January 16, 2014, regarding the mortgage loan account described above. We appreciate you bringing this to our attention, as we take all matters such as this seriously.

Some information you have requested does not pertain directly to the servicing of the loan, does not identify any specific servicing errors, and/or is considered proprietary and confidential. Therefore, this information is considered outside the scope of information that must be provided. However, the information below and enclosed documents should address any of your relevant questions and requests. Enclosed, you will find the following documents:

- Note and Security Instrument

    o   The Note and Security Instrument will validate the above-mentioned loan. These documents will explain our rights to:

        ▪   Collect any remaining debt owed under the Note and Security Instrument

        ▪   Assess fees and costs to the loan as necessary, including late fees if a payment is received after the specified grace period and legal fees if a loan is in default

        ▪   Inspect the property and charge applicable fees

        ▪   Purchase lender placed insurance

        ▪   Pay taxes on the mortgagor's behalf

- Payment History

    o   The payment history reflects a complete payment history for the period Nationstar has serviced the loan. Late fees are assessed any time the contractual payment is received after the grace period, as stipulated in the Note. Please note, late fees are not considered interest and are not reported to the IRS on IRS Form 1098. If a payment was applied to the suspense account, it will be indicated in the code description column. Payments can be applied to the suspense account if the funds received do not represent the full monthly mortgage payment due, or if Nationstar is not informed of where the payment is to be applied. Furthermore, this payment history reflects:

        ▪   When payments were received

This is an attempt to collect a debt and any information obtained will be used for that purpose. If this debt is in or has been discharged in a bankruptcy proceeding, be advised this communication is not an attempt to collect the debt against you. Please note, however, we reserve the right to exercise the legal rights only against the property securing the original obligation.





- How the payments were applied to the loan

- Any disbursements made from the loan, including, but not limited to, disbursements for taxes, insurance, property inspections, broker's price opinions (BPOs), and legal fees

- A description for each transaction, with running balances of the unpaid principal and escrow accounts

- The date fees and charges were assessed, if any

- Any amounts paid towards fees

- Any waivers/reversals of fees

- Most Recent Billing Statement

  o The billing statement will reflect the current amount due on the loan, and will also provide a breakdown of any fees assessed, including any lender paid expenses or corporate advance fees.

- Payoff Quote

  o The Payoff Quote will include the full amount necessary to pay the loan in full. You may have received a copy of the Payoff Quote under a separate cover. This document is sent for informational purposes only, is in no way a demand to pay the loan in full, and will not result in any additional fees being assessed to the loan.

Furthermore, our records indicate The Federal National Mortgage Association (Fannie Mae) is the current owner of the Note. As requested, we have provided the address and phone number below:

Fannie Mae
3900 Wisconsin Avenue, NW
Washington, DC 20016-2892
1.800.732.6643

Please note that Nationstar is the servicer of the loan, and therefore, will be responsible for responding to any concerns regarding the servicing of the loan. Servicing matters include, but are not limited to, payment assistance and modifications, payment posting, validation of the debt, foreclosure proceedings, and payment adjustments. As such, please direct any correspondence related to these matters to Nationstar.

Additionally, the owner of the mortgage Note is the note holder of the loan Note. However, there are some circumstances where the owner has given temporary possession of the loan note to the servicer. The owner does this in order to ensure that the servicer is able to perform the services and duties incident to the servicing of the mortgage loan, such as foreclosure actions, bankruptcy cases, and other legal proceedings.

Upon receipt of this correspondence, the above-mentioned loan and related documents were reviewed and found to comply with all state and federal guidelines that regulate them. As such, the above-mentioned loan account will continue to be serviced appropriate to its status.

Furthermore, the payment history appears to be reported accurately to the main credit repositories. If you have documentation that substantiates that any of the information reported by Nationstar on the credit report is incorrect, please provide the detailed information for review.

This is an attempt to collect a debt and any information obtained will be used for that purpose. If this debt is in or has been discharged in a bankruptcy proceeding, be advised this communication is not an attempt to collect the debt against you. Please note, however, we reserve the right to exercise the legal rights only against the property securing the original obligation.





As of the date of this correspondence, the account is approximately 14 payments delinquent and contractually next due for the January 1, 2013 monthly installment. Should you have any questions or concerns regarding the account, or if you would like to discuss available payment assistance options including modification, reinstatement, or liquidation, you may work directly with:

Single Point of Contact (SPOC) Information
Name: Sandra Iro
Title: Dedicated Loan Manager
Phone Number: 469.549.2367
Extension: 1003793

At Nationstar, customer concerns are important to us. Should you have any questions, please contact me directly; or, if you have general questions regarding the account, please contact:

Loss Mitigation Department
Monday and Thursday, 7:00 a.m. to 8:00 p.m. CDT
Tuesday and Wednesday, 7:00 a.m. to 11:00 p.m. CDT
Friday, 7:00 a.m. to 5 p.m. CDT
Saturday, 7:00 a.m. to 12:00 p.m. CDT
Toll-free Number: 1.877.450.8638

Sincerely,

Eric Daniels
Customer Relations Specialist
Nationstar Mortgage LLC
350 Highland Drive
Lewisville, TX 75067
phone: 469.549.2396
facsimile: 469.312.4333
e-mail: Eric.Daniels@nationstarmail.com

Enclosures 7
By Fed Ex 7978 0411 9103

This is an attempt to collect a debt and any information obtained will be used for that purpose. If this debt is in or has been discharged in a bankruptcy proceeding, be advised this communication is not an attempt to collect the debt against you. Please note, however, we reserve the right to exercise the legal rights only against the property securing the original obligation.

*Renfroe v. Nationstar Mortgage, LLC*
No.: 15-10582

# Addendum 3

**Redline Comparison of Nationstar's Letters**

**(Note: This document is not in the record on appeal. It is a comparison of Doc. 28-1, pp. 1-3 and pp. 4-6, Nationstar's Response Letters.)**

~~February 3,~~June 26, 2014

~~Aaron James~~
~~P. O. Box 479~~
Margaret C. Renfroe
109 Glenwood St
~~Theodore, AL  36590~~Mobile, AL  36606

RE:     Nationstar Reference Number – NSM-~~0~~106-14-~~3558~~62960
        Mortgagor – ~~Aaron James~~Margaret Renfroe
        Property Address – ~~7363 Elmo Avenue, Theodore~~109 Glenwood St, Mobile, AL  ~~36590~~36606
        Loan Number -- _____

Dear ~~Aaron James~~Margaret C. Renfroe:

Nationstar Mortgage LLC (Nationstar) is in receipt of your correspondence ~~dated January 16,~~on June 23, 2014, regarding the ~~mortgage loan account described~~above reference property.  We appreciate ~~you bringing~~the effort on your part to bring this to our attention~~,~~ as we take all such matters ~~such as this~~seriously.

Some information you have requested does not pertain directly to the servicing of the loan, does not identify any specific servicing errors, and/or is considered proprietary and confidential.  Therefore, this information is considered outside the scope of information that must be provided.  However, the information below and enclosed documents should address any of your relevant questions and requests.  Enclosed, you will find the following documents:

- Note and Security Instrument

    - The Note and Security Instrument will validate the above-mentioned loan.  These documents will explain our rights to:

        - Collect any remaining debt owed under the Note and Security Instrument

        - Assess fees and costs to the loan as necessary, including late fees if a payment is received after the specified grace period and legal fees if a loan is in default

        - Inspect the property and charge applicable fees

        - Purchase lender placed insurance

        - Pay taxes on the mortgagor's behalf

- Payment History

    - The ~~payment history~~Payment History reflects a complete ~~payment~~history for the period Nationstar has serviced the loan.  Late fees are assessed any time the contractual payment is received after the grace period, as stipulated in the Note.  Please note, late fees are not considered interest and are not reported to the IRS on IRS Form 1098.  If a payment was applied to the suspense account, it will be indicated in the code description column.  Payments can be applied to the suspense account if the funds received do

not represent the full monthly mortgage payment due, or if Nationstar is not informed of where the payment is to be applied.  Furthermore, this ~~payment history~~Payment History reflects:

- When payments were received

- How the payments were applied to the loan

- Any disbursements made from the loan, including, but not limited to, disbursements for taxes, insurance, property inspections, broker's price opinions (BPOs), and legal fees

- A description for each transaction, with running balances of the unpaid principal and escrow accounts

- The date fees and charges were assessed, if any

- Any amounts paid towards fees

- Any waivers/reversals of fees

- Most Recent Billing Statement

  o The ~~billing statement~~Billing Statement will reflect the ~~current~~last amount due on the loan prior to payoff, and will also provide a breakdown of any fees assessed, including any lender paid expenses or corporate advance fees.

- Notice of Servicing Transfer, also known as Welcome Letter

  o The Servicing Transfer Notice will detail the date and terms of the service transfer from the prior servicer to Nationstar.  This document evidences Nationstar's right to service the loan.

- Most Recent Escrow Analysis Statement

  o The Escrow Analysis will provide a detailed description of all disbursements made from the escrow account, as well as any payments towards the escrow account for the prior year.  It will also provide a breakdown of how the current escrow payment has been calculated, including any shortages that may exist.

- Payoff Quote

  o The Payoff quote will include the full amount necessary to pay for the loan in full. You may have received a copy of the Payoff Quote under a separate cover.  This document is sent for informational purposes only, is in no way a demand to pay the loan in full, and will not result in any additional fees being assessed to the loan.

Furthermore, our records indicate ~~The Federal National Mortgages Association (Fannie Mae) is the current~~American General S05 was the owner of the ~~Note~~note prior to payoff.    As requested, we have provided the address and phone number below:

~~Fannie Mae~~
American General Mortgage
~~3900 Wisconsin Avenue, NW~~604 NW Second St
~~Washington, DC 20016-2892~~
~~1.800.732.6643~~

Evansville, IN  47711

800.757.1983

2

Please note that Nationstar is the servicer of the loan, and therefore, will be responsible for responding to any concerns regarding the servicing of the loan.  Servicing matters include, but are not limited to, payment assistance and modifications, payment posting, validation of the debt, foreclosure proceedings, and payment adjustments.  As such, please direct any correspondence related to these matters to Nationstar.

Additionally, the owner of the mortgage Note is the ~~note holder~~noteholder of the loan Note.  However, there are some circumstances where the owner has given temporary possession of the loan note to the servicer.  The owner does                                                                                                                                                                                  this

3

in order to ensure that the servicer is able to perform the services and duties incident to the servicing of the mortgage loan, such as foreclosure actions, bankruptcy cases, and other legal proceedings.

Upon receipt of this correspondence, the above-mentioned loan and related documents were reviewed and found to comply with all state and federal guidelines that regulate them.  As such, the above-mentioned loan account will continue to be serviced appropriate to its status.

You asked us to provide the prior servicer loan history.  After conducting an investigation, Nationstar is unable to locate the information you requested.  This information is unavailable.  However, we did review the account, and all transactions appear to be correct from our records review.  If you think there is an error in the servicing of the account, please let us know so that we can investigate and resolve any potential servicing error.

Furthermore, the ~~payment history~~ Payment History appears to be reported accurately to the main credit repositories. If you have documentation that substantiates that any of the information reported by Nationstar on the credit report is incorrect, please provide the detailed information for review.

As of the date of this correspondence, the account is approximately 14 payments delinquent and contractually next due for the January 1, 2013 monthly installment. Should you have any questions or concerns regarding the account, or if you would like to discuss available payment assistance options including modification, reinstatement, or liquidation, you may work directly with:

Single Point of Contact (SPOC) Information
Name: Sandra Iro
Title: Dedicated Loan Manager
Phone Number: 469.549.2367
Extension: 1003793

At Nationstar, customer concerns are important to us. Should you have any questions, please contact me directly; or, if you have general questions regarding the account, please contact:

Loss MitigationCustomer Service Department
Monday andthrough Thursday, 7:008 a.m. to 8:00 p.m. CDTCentral Time
Tuesday and Wednesday, 7:00 a.m. to 11:00 p.m. CDT
Friday, 7:008 a.m. to 5:006 p.m. CDTCentral Time
Saturday, 7:008 a.m. to 12:002 p.m. CDTCentral Time
Toll-free Number: 1.877.450.8638888.480.2432

Sincerely,

/s/ Eric DanielsDe'Marco Jefferson

Eric Daniels
De'Marco Jefferson
Customer Relations Specialist
Nationstar Mortgage LLC
350 Highland Drive
Lewisville, TX 75067
phone: 469.549.2396
facsimile: 469.312.4333
Phone: 480.467.0523
e-mail: Eric.Daniels@nationstarmailDe'Marco.Jefferson@Nationstarmail.com

Enclosures 78
By Fed Ex 7978 0411 9103United States Postal Service

5

Document comparison by Workshare Compare on Tuesday, May 05, 2015
3:38:57 PM

| Input: | |
|---|---|
| Document 1 ID | file://\\BHMSP-FS01\home$\vkirk\Redirection\Desktop\Aaron James Letter.docx |
| Description | Aaron James Letter |
| Document 2 ID | file://\\BHMSP-FS01\home$\vkirk\Redirection\Desktop\Margaret Renfroe Letter.docx |
| Description | Margaret Renfroe Letter |
| Rendering set | standard |

| Legend: |
|---|
| Insertion |
| Deletion |
| Moved from |
| Moved to |
| Style change |
| Format change |
| Moved deletion |
| Inserted cell |
| Deleted cell |
| Moved cell |
| Split/Merged cell |
| Padding cell |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 55 |
| Deletions | 55 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 110 |