_____

**No.: 15-10582**
_____

**United States Court of Appeals
for the Eleventh Circuit**
_____

**MARGARET C. RENFROE,**
*Plaintiff-Appellant*

**v.**

**NATIONSTAR MORTGAGE, LLC,**
*Defendant-Nationstar.*
_____

**On Appeal from the United States District Court
for the Southern District of Alabama
1:14-CV-00314-CB-M**
_____

**APPELLANT REPLY**
_____

**Kenneth J. Riemer**
**Underwood & Riemer PC**
**166 Government Street, Suite 100**
**Mobile, Alabama 36602**
**251.432.9212**
*Counsel for the Appellant*

**May 26, 2015**

_____

i

## TABLE OF CONTENTS WITH PAGE REFERENCES

Table of Contents ...................................................................................... ii

Table of Citations ..................................................................................... iii

Argument .....................................................................................................1

A.  **RESPA and Reg. X Impose a Substantive Duty to Correct Error and Restrict Servicer's Ability to Rely on its Subjective Belief that No Error Occurred** .................................................................................................1

B.  **Renfroe's Allegations of Servicing Error are Not Negated By Nationstar's Response Letter** .......................................................................4

C.  **"Unavailable" Prior Servicer Pay History Does Not Relieve Nationstar of Duty to Correct Error** ..............................................................7

D.  **Nationstar Failed To Comply with the Reg. X Disclosure Requirements** .........................................................................................8

E.  **RESPA Requires More Than Bare Denial of Error and Requirement that Borrower Make Follow-up Call** .........................................................11

F.  **Renfroe Adequately Alleged Actual and Statutory Damages** .................12

G.  **RESPA Remedies and Breach of Contract** ...........................................14

**CERTIFICATE OF SERVICE** .......................................................................16

# TABLE OF CITATIONS

## <u>CASES</u>

<u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949, 173 L.Ed. 2d 868 (2009) ........................14

<u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) ...………………….......14

<u>Boggio v. USAA Fed. Sav. Bank</u>, 696 F.3d 611 (6th Cir. 2012) ...........................5

<u>Brim v. Midland Credit Mgmt., Inc.</u>, 795 F. Supp. 2d 1255 (N.D. Ala. 2011) ........5

<u>Erickson v. Pardus</u>, 551 U.S. 89 (2007) ..................................................................14

<u>Glover v. Udren</u>, 2010 WL 5829248 (W.D. Pa. Oct. 21, 2010) .............................14

<u>Guccione v. JPMorgan Chase Bank, N.A.</u>, 2015 WL 1968114
(N.D. Cal. May 1, 2015) ...........................................................................2, 3, 5

<u>Johnson v. MBNA Am. Bank, NA</u>, 357 F.3d 426 (4th Cir. 2004)…………………5

<u>Kapsis v. Am. Home Mortgage Servicing Inc.</u>, 923 F. Supp. 2d 430
(E.D.N.Y. 2013).....................................................................................................13

<u>Marais v. Chase Home Fin. LLC</u>, 736 F.3d 711 (6th Cir. 2013)............................13

<u>Rosen v. Verizon Penn.</u>, L.L.C., 2014 WL 1259566 (E.D.Pa. Mar. 27, 2014).........5

<u>Selman v. CitiMortgage, Inc.</u>, 2013 WL 838193 (S.D. Ala. Mar. 5, 2013)............13

<u>Wilson v. Bank of Am., N.A.</u>, 2014 WL 4744555 (E.D. Pa. Sept. 24, 2014).......2, 5

## <u>STATUTES</u>

12 U.S.C. § 2605(e) ........................................................ 1, 2, 3, 8, 12, 13, 14, 15
12 U.S.C. § 2605(k) .................................................................................1, 15

**REGULATIONS**

12 C.F.R. § 1024.35 ...................................................................................2, 3, 12, 15

**OTHER AURHORITY**

77 Fed. Reg. 57227 ...................................................................................................2

**ARGUMENT**

**A.    RESPA and Reg. X Impose a Substantive Duty to Correct Error and Restrict Servicer's Ability to Rely on its Subjective Belief that No Error Occurred.**

Nationstar insists on appeal that it is not required to actually correct a servicing error, only to respond to a NOE with a statement as to whether an error occurred, regardless of the correctness of its position.  "[I]t is what the servicer 'believes' and the servicer's 'determination' that counts, not a final determination of whether the account is correct by a court of law."  (Nationstar Brief, p. 23).  To hold otherwise, says Nationstar, would be to improperly "federalize breach of contract law."  (Id.).

Nationstar's position clashes with the substantive duties unambiguously imposed by RESPA and Reg. X.  Section 2605(e) requires a servicer to "make appropriate corrections in the account of the borrower, *including the crediting of any late charges or penalties. . ..*"  12 U.S.C. § 2605(e)(2)(A)(emphasis added).  A servicer also violates RESPA when it "fail[s] to take timely action to respond to a borrower's requests to correct errors *relating to allocation of payments, final balances for purposes of paying off the loan*, or avoiding foreclosure, or other standard servicer's duties."  12 U.S.C. § 2605(k)(1)(C) (emphasis added).  The 2013 Reg. X amendments spring from these basic mandates and clarify that a servicer must choose between two options.  It may correct the error identified in the NOE, in which case it

1

must notify the borrower of the changes made. Alternatively, the servicer may determine that no error exists, but only if that determination is based on a "reasonable investigation." 12 U.S.C. § 2605(e)(2)(B); 12 C.F.R. 1024.35(e)(1)(i)(B). These requirements extend beyond mere disclosure or procedural edict. They unambiguously require a servicer to correct errors detectable upon reasonable investigation. If a servicer's belief that no error occurred is unreasonable or unexplained, there is a violation. "If a servicer determines that no error occurred, it is required to have conducted a reasonable investigation...." 77 Fed. Reg. 57227. Therefore, a RESPA claim is stated with allegations that an error occurred, that notice of the error was provided and that the servicer failed to correct the error and failed to conduct any reasonable investigation. Wilson v. Bank of Am., N.A., 2014 WL 4744555, slip op. at 15 (E.D. Pa. Sept. 24, 2014); Guccione v. JPMorgan Chase Bank, N.A., 2015 WL 1968114, slip op. at 12 (N.D. Cal. May 1, 2015).

Guccione, issued earlier this month, addressed facts and claims similar to Renfroe's. Guccione claimed that Chase overcharged her and improperly inflated its payoff quote. Guccione alleged that "Chase neither corrected [the] errors nor conducted a reasonable investigation into them" and that "[i]f Chase had done so, [it] would have" issued a refund. Id., slip op. at 11. After examining the Reg. X amendments, the court confirmed that these allegations state a RESPA claim. Id.

2

The court also rejected arguments similar to those advanced by Nationstar here. Chase argued that Guccione failed to state a claim because her NOE only complained about being "overcharged." This was rejected. "[B]eing overcharged is one of the errors that the regulation says a borrower may identify." Id. Chase also argued that its failure to correct the error was excused by Guccione's failure to provide documentation establishing the error. "[B]ut section 1024.35 does not require Plaintiffs to do that; it only requires them to identify the errors..... Requiring Plaintiffs to provide all of the documentation regarding the errors impermissibly shifts the burden to conduct a reasonable investigation from the servicers (where the regulation puts it) to the borrower." Id.

As does Nationstar here, Chase argued that because its response addressed the complaint, that response negated any claim of failure to investigate. This too was rejected because the response merely "reiterated the escrow charges" and "never explained why the charges were valid." Id. Section 1024.35 expressly requires that any determination that no error took place must be accompanied with a "written explanation of the reasons for this determination." 12 U.S.C. § 2605(e)(2)(B)(i); 12 C.F.R. § 1024.35(e)(1)(i)(B). As in Guccione, this is fatal to Nationstar's position. Renfroe clearly alleges that no explanation of Nationstar's denial of error was provided; and Nationstar's response letter confirms that fact. (Doc 24- Am. Compl.

3

p. 4 ¶12).  This by itself is a violation of RESPA and Reg. X.

**B.     Renfroe's Allegations of Servicing Error are Not Negated By Nationstar's Response Letter.**

Renfroe's NOE described in detail her belief that payments Nationstar collected from her were based on the wrong amortization, as well as her belief that this error "resulted in a larger payoff that I had to pay when I refinanced the loan last September than what would otherwise have been the case."  (Doc 24- Am. Compl. pp. 3-4 ¶ 11).  She attached a copy of the promissory note and Truth-in-Lending ("TILA") statement so that Nationstar could compare those to its records and see that the payoff calculation was wrong.  (Id.) The Amended Complaint states that "the payoff amount Renfroe was required to pay was calculated on the wrong amortization schedule and included other unlawful charges, including money wrongfully collected for taxes she did not owe..." (Doc 24- Am. Compl. p. 7, ¶ 20).  As alleged, even a cursory comparison of the note to Nationstar's payoff calculation would show that the amortization Nationstar used was wrong.[1]  Accordingly, the Amended Complaint states that Nationstar "failed to conduct any reasonable investigation of the errors described in Plaintiff's letter and failed to refund monies wrongfully collected."  (Doc 24- Am. Compl. p. 9, ¶ 30).

---

[1]In fact, even the partial pay history that was provided by Nationstar confirms at least that the principal and interest allocation applied at the end of the loan differed from the original 30-year amortization.

The reasonableness of an investigation is a question of fact and is determined by the particulars of each case.  Boggio v. USAA Fed. Sav. Bank, 696 F.3d 611 (6th Cir. 2012); Rosen v. Verizon Penn., L.L.C., 2014 WL 1259566 (E.D.Pa. Mar. 27, 2014).  Assuming Renfroe's payoff was in fact miscalculated (as alleged), a simple comparison of  the original terms reflected in the TILA disclosure and original note (which she provided) to the method used to compute the payments and payoff amount would have revealed the error.  Instead, Nationstar provided only a bare recitation that no error occurred.  Renfroe plausibly alleged that this conclusion could not be the result of any reasonable investigation.  Wilson, 2014 WL 4744555 at15; Guccione, 2015 WL 1968114 at 12; *see also* Johnson v. MBNA Am. Bank, NA, 357 F.3d 426, 430 (4th Cir. 2004)(reasonable investigation must include a "qualitative component" and not merely beg the question by simply reciting that the information is correct);  Brim v. Midland Credit Mgmt., Inc., 795 F. Supp. 2d 1255, 1264 (N.D. Ala. 2011).

Nationstar argues that the plausibility of these allegations are negated by its NOE response.  But there is nothing in the response letter that addresses Renfroe's specific questions in any detail, much less negates her claim that the payoff was miscalculated. The only information provided which even remotely relates to the miscalculated payoff is a *partial* payment history and the generic statement that the

5

"loan and related documents were reviewed and found to comply with all state and federal guidelines that regulate them." That payment history covered only 31 months of the total 88-month history of the loan. No payment information was provided for the period prior to Nationstar's servicing and Nationstar gave no description of how the payments were calculated by the prior servicer. It simply stated that the prior servicer information was unavailable. The NOE response likewise failed to explain how Nationstar calculated the payoff amount and whether that calculation was based on the actual loan terms. Nationstar merely attached the partial history, stated that there was no error and invited Renfroe to contact them further if "you think there is an error in the servicing of the account...so that we can investigation and resolve any potential servicing error." Id.

To be sure, there exist possible explanations for how an amortization could legitimately change over the course of a loan. For example, a loan modification could have altered the original payment terms. But Nationstar provided no such explanation. It provided no explanation at all. It just denied that there was anything wrong with its calculation without any explanation of the basis of that determination, leaving Renfroe to wonder why the amortization at the end of her loan differed from the original loan terms. Not only does this response violate RESPA's requirement that any denial of error be explained, it also leaves plausible Renfroe's allegation that

6

at some point the servicer impermissibly started applying different payment terms and that this mistake resulted in an incorrect payoff amount. Because the payoff was incorrectly calculated on a 40-year amortization (as must be assumed), there was a servicing error. Because this resulted in an overcharge, Renfroe should have been refunded any wrongfully collected money.

**C.    "Unavailable" Prior Servicer Pay History Does Not Relieve Nationstar of Duty to Correct Error.**

Nationstar peppers its brief with reference to a "complete pay history" being provided to Renfroe (Nationstar Brief, pp. 13, 25-26, 32, 36-37, 40), glossing over the fact that it failed to provide any information about what was paid and how payments were applied during the first 57 months of the loan. The incompleteness of this information is critical to Renfroe's predicament because without a truly complete pay history, or some other description of what was collected and how it was applied, she's left with no way to determine how Nationstar calculated the payoff or whether her loan was correctly amortized. Whether Nationstar was specifically required to provide prior servicer history is beside the point. Nationstar was required to conduct a reasonable investigation and correct errors which that investigation would have revealed; and it was required to explain the reasons for its determination that no error occurred. It could have complied with these requirements even without providing a full payment history. Nationstar could have, in the absence of a complete

7

pay history, provided some explanation of how her loan was amortized and how the payoff was calculated, as well an explanation of why it believes it complied with the loan terms.  After all, in order to properly service the loan, it must have *some* idea of what happened with the loan payments prior to its servicing.  But Nationstar provided neither a complete history nor any explanation which addressed her concern, providing no explanation for how Nationstar determined that her payments and payoff were properly calculated.

While RESPA contemplates the possibility that some borrower-requested information may be unavailable, it requires the servicer to do more than simply state that the information is unavailable.  The servicer must provide "an explanation of why the information requested is unavailable or cannot be obtained by the servicer." 12 U.S.C. § 2605(e)(2)(C)(i).  Such an explanation might have shed light on the mystery of how Nationstar could correctly service the loan without any information about what payments were made and how they were applied during the first 57 months of loan history.

**D.    Nationstar Failed To Comply with the Reg. X Disclosure Requirements.**

In addition to the failure to correct the error, Renfroe adequately alleged that Nationstar's response violated the disclosure requirements set out in Section 2605(e) and Reg. X.  Renfroe alleges that the response "failed to provide any explanation of

payment calculation or amortization; and failed to specifically answer Mrs. Renfroe's questions. Nationstar also failed to provide the specifically requested information." (Doc 24- Am. Compl. p.4, ¶ 12).

Despite the large dose of spin Nationstar puts on its form letter, nothing in that letter negates these allegations. While the letter offers the conclusion that "[t]he information below and enclosed documents should address any of your relevant questions and requests," that is simply not the case. Nationstar's letter failed to address Renfroe's very specific claim that the payoff amount was based on an incorrect amortization. She specifically asked "whether you have ever calculated my payments based on a maturity date other than June 1, 2036 [the maturity date stated in the note]. If so, state when such calculation started and how many payments you collected from me based on that calculation." (Doc 24- Am. Compl. p. 4, ¶ 11). Nationstar failed to answer that question. It merely spat out the generic statement that "all transactions appear to be correct." Renfroe also asked Nationstar for "[a] detailed explanation of each payment increase and the reasons for the increase." (Doc 24- Am. Compl. p. 4, ¶ 11). Nothing in the response identifies a payment increase or explains the reasons for any increase. Nationstar also failed to answer Renfroe's specific questions and information requests concerning homeowner's insurance, the calculation of her payments and payoff amount. (Doc 24- Am. Compl. pp. 3-4, ¶ 11).

9

Nationstar places importance on the documents attached to the response, but they too fail to provide the explanation and information Renfroe requested. Providing the note is exceedingly unhelpful and non-responsive. The note only describes what the principal and interest payments *should* be, assuming no modification. It provides no information as to how the payments were actually calculated and applied, and no explanation of the method used to calculate the payoff. Moreover, _she_ provided the note to Nationstar with her NOE. That Nationstar would return the same document back and then state that it answers her "relevant questions and requests" underscores the generic nature of the response and the lack of attention given to her specific situation. Likewise, the attached partial payment history provides no explanation for when or why the payments increased. At most, it would only reflect the fact of the increase and the components of the payment. Moreover, as explained, the history leaves out the 57 months prior to Nationstar's servicing and Nationstar failed to explain, as required, why the previous history was unavailable. The same is true for the monthly statement, which only describes the amount owed for the current month and provides no explanation of how prior payments were calculated.

Taken together, the letter and attachments corroborate rather than negate Renfroe's allegation that Nationstar's response failed to adequately address the errors and requests stated in her NOE.

**E.    RESPA Requires More Than Bare Denial of Error and Requirement that Borrower Make Follow-up Call.**

Nationstar emphasizes the invitation stated in its NOE response for Renfroe to call "[i]f you think there is an error in the servicing of the account...so that we can investigate and resolve any potential servicing error." (Nationstar Brief, pp. 11, 19 & 25).  This statement epitomizes the mortgage servicing "runaround" about which borrowers routinely complain.  By the time Renfroe received the NOE response, she had already attempted "several times" to get answers by calling Nationstar.  As she stated in her NOE, she was writing the letter precisely because calling Nationstar had proven futile.  She resorted to writing a letter which unambiguously communicated to Nationstar that she believes an error occurred and she specifically requested that the error be investigated.  She then receives a response instructing her to start the process all over if she "think[s] there is an error."  What good would it do for her to repeat that communication?  Rather than conduct an investigation or provide any meaningful response to her specific concerns, Nationstar merely invites her to repeat the process, and then peddles this invitation to this Court as a valid substitute for any meaningful response to the NOE.

Nationstar's obligations under Section 2605(e) can in no way be satisfied by the circular invitation to call "if you think an error has occurred."  Such tactic is addressed in Reg. X which prohibits a servicer from requiring action from the

11

borrower "as a condition of investigating an asserted error."    12 C.F.R. §

1024.35(e)(2).  Thus, Nationstar's invitation to repeat the futile exercise of requesting

correction of an error which it has already ignored (twice) cannot mitigate its RESPA

obligations or its liability.  Nor is there any basis for the audacious suggestion that

Renfroe should have taken another ride on the Nationstar carousel of un-information

rather than filing this suit to enforce her right to have the error corrected. (Nationstar

Brief, p. 11).

**F.      Renfroe Adequately Alleged Actual and Statutory Damages.**

Nationstar argues that actual damages cannot include the return of money it

wrongfully collected before Renfroe "triggered Nationstar's duties under § Section

2605(e)(2)." (Nationstar Brief, p. 52).  Yet, RESPA and Reg. X both list examples of

servicing errors which describe the *prior* unlawful collection of money (*e.g.*,

wrongfully collected late fees and failure properly apply payments).  12 U.S.C. §

2605(e)(2)(A); 12 C.F.R. 1024.35(b)(1).  Moreover, RESPA describes the correction

of an error to include "the crediting of" unlawful charges.  12 U.S.C. § 2605(e)(2)(A).

"Crediting" charges necessarily describes repayment of funds collected prior to the

NOE.  If the servicer fails to do so, then the proximate damages resulting from that

failure are the uncredited funds.  *See, e.g.*, Kapsis v. Am. Home Mortgage Servicing

Inc., 923 F. Supp. 2d 430, 448 (E.D.N.Y. 2013).

The language from the Sixth Circuit's <u>Marais</u>[2] opinion referenced by Nationstar addressed the particular facts in that case.  Nothing in the opinion lends support for the radical notion that a RESPA plaintiff can only recover damages for money wrongfully collected *after* a NOE.  <u>Selman</u> is distinguishable because it addressed bare-bones allegations which failed to link any damages with any 2605(e) violation.  <u>Selman v. CitiMortgage, Inc.</u>, 2013 WL 838193, slip op. at 9 (S.D. Ala. Mar. 5, 2013).  Renfroe specifically linked Nationstar's failure to refund wrongfully collected money to its failure to comply with 2605(e) and proximately caused damages.  (Doc 24- Am. Compl. p. 7, ¶ 20).

With respect to statutory damages and the "pattern or practice" requirement, Renfroe's allegations go well beyond the conclusory and bare-bones allegations rejected in the cases cited by Nationstar.  (Doc 24- Am. Compl. pp. 5-6, ¶¶ 15-16).  She identified five specific instances of substantially similar non-compliance.  Nationstar can only complain that Renfroe omitted the names of the referenced borrowers.  But this overstates the pleading standard.  Renfroe is not obligated to *establish* a pattern or practice in her complaint, or even to provide "specific facts" supporting her allegations.  <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007) *quoting* <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  Her allegations easily satisfy

---

[2]<u>Marais v. Chase Home Fin. LLC</u>, 736 F.3d 711 (6th Cir. 2013)

13

the requirement that she provide enough facts from which to reasonably infer that Nationstar engages in a pattern or practice of Section 2605 violations. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

## G.    RESPA Remedies and Breach of Contract.

According to Nationstar, it should not liable for failing to correct errors and is under no obligation to refund wrongfully collected money because Congress did not intend to "federalize" contract law.   No support is cited for this proposition.

Besides the lack of support, a fundamental problem with Nationstar's "federalization" statement is that it conflates two distinct legal concepts: a lender's liability for breach of the note and/or mortgage, on the one hand; and a servicer's statutory obligations under RESPA on the other.   A lender owns the loan and is in contractual privity with the borrower. This is distinct from and a "servicer," which may or may not be a party to the loan agreement. *See, e.g.*, Glover v. Udren, 2010 WL 5829248, slip op. at 3 (W.D. Pa. Oct. 21, 2010), *report and recommendation adopted*, 2011 WL 666176 (W.D. Pa. Feb. 14, 2011)(servicer not liable for lender's breach of note).   RESPA liability does not require privity.   Congress provided consumers a distinct claim as to servicers which may or may not also be available through a common law action for breach against a lender.   Moreover, some of the statutory remedies recoverable against servicers (e.g., attorney's fees and statutory

14

damages) do not correspond with common law remedies for breach. That these two distinct sets of claims and remedies may overlap (assuming the servicer is also in contractual privity) is immaterial to a servicer's liability for RESPA violations. Nothing in RESPA or Reg. X even remotely suggests that a borrower's statutory remedies are somehow curtailed by the availability of relief through an action for breach. In fact, both Congress and the Bureau list examples of errors (e.g., improperly charged late fees and misapplication of payments) which would also constitute a breach of the mortgage and/or note. 12 U.S.C.A. § 2605(e)(2) & (k)(1)(C); 12 C.F.R. § 1024.35(b). The failure to correct such an error or reasonably investigate the NOE is a RESPA violation, giving rise to statutory remedies. That some of those remedies may also be available through a common law action provide servicers no escape from the duties imposed by RESPA and Reg. X.

\s\Kenneth J. Riemer_____
KENNETH J. RIEMER
UNDERWOOD & RIEMER, PC
Attorney for the Appellant
166 Government Street
Mobile, Alabama 36602
(251) 432-9212
kjr@alaconsumerlaw.com

15

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of May, 2015 I have filed the Reply Brief for appellant with the Eleventh Circuit U.S. Court of Appeals CM/ECF Document Filing System and a copy of the reply brief for appellant was served upon the following counsels of record via the United States mail, postage prepaid and properly addressed:

Gregory C. Cook
Ed R. Haden
Balch & Bingham, LLP
Post Office Box 306
Birmingham AL 35201-0306

Griffin Lane Knight
John Wesley Naramore
BALCH & BINGHAM, LLP
Post Office Box 78
Montgomery AL 36101-0078

John Ley, Clerk   *(Original plus 6 copies)*
US Court of Appeals for the Eleventh Circuit
56 Forsyth Street NW
Atlanta, GA 30303-2218

\s\Kenneth J. Riemer_____
OF COUNSEL

16